CONN LAW, PC
ELLIOT CONN          Bar No. 279920
354 Pine Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 417-2780
Facsimile: (415) 358-4941
elliot@connlawpc.com

VARNELL & WARWICK, P.A.
JANET R. VARNELL (*pro hac vice*)
BRIAN W. WARWICK (*pro hac vice*)
MATTHEW T. PETERSON (*pro hac vice*)
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com

Attorneys for Plaintiff Ying Ying Guan and the potential class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| YING YING GUAN, individually, on behalf of all others similarly situated, and on behalf of the general public<br><br>Plaintiff.<br><br>vs.<br><br>MERCEDES-BENZ USA, LLC; and DOES 1 through 50, inclusive,<br><br>Defendants.<br><br>_____/ | Case No. 4:20-cv-05719 (JST)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S SURREPLY IN SUPPORT OF OPPOSITION TO DEFENDANT MBUSA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge:      Jon S. Tigar<br><br>Date:       Hearing Vacated<br>Time:       N/A<br>Courtroom: 6, 2nd Floor<br>Trial Date:  N/A |

1   Pursuant to Rule 201 of the Federal Rules of Evidence ("FRE"), Plaintiff Ying Ying

2   Guan ("Plaintiff") hereby requests that the Court take judicial notice of the following documents

3   in support of Plaintiff's Surreply in Support of Plaintiff's Opposition to Defendant Mercedes-

4   Benz USA, LLC's ("MBUSA") Motion to Dismiss the First Amended Complaint.

5   **Exhibit A:** The Declaration of Brad Ortloff in Support of Defendants American Honda

6   Motor Co., Inc.'s and Honda North America, Inc.'s Motion to Dismiss Plaintiffs' First Amended

7   Complaint in *David Elkins*, *et al. v. American Honda Motor Co., Inc. et al.*. United States

8   District Court, Central District of California, Southern Division, Case No. 8:19-CV-00818 JLS

9   (KESx), Document 40-2 (October 18, 2019).

10   **Exhibit B:** The December 2019 Settlement Agreement entered between the United States

11   Department of Transportation National Highway Traffic Safety Administration and Mercedes-

12   Benz USA, LLC in *In re: Audit Query 18-004 Mercedes-Benz USA, LLC.*

13   <u>**ARGUMENT**</u>

14   FRE 201 provides that the Court may take judicial notice of facts "not subject to

15   reasonable dispute" because they are "capable of accurate and ready determination by sources

16   whose accuracy cannot reasonably be questioned." FRE 201(b). The Court may take judicial

17   notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa*

18   *USA, Inc.*, 442 F. 3d 741, 746 n. 6 (9th Cir. 2006); *see also Hott v. City of San Jose*, 92 F. Supp.

19   2d 996, 998 (N.D. Cal. 2000) ("Pursuant to Federal Rule of Evidence 201, the Court may take

20   judicial notice of papers filed in other courts."). And the Court "may take judicial notice of

21   records and reports of administrative bodies." *Interstate Nat. Gas Co. v. S. California Gas Co.*,

22   209 F.2d 380, 385 (9th Cir. 1953) *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales,*

23   *Practices & Prods. Liab. Litig.*, 890 F.Supp.2d 1210, 1216 n.2 (C.D. Cal. 2011) (granting

24   request for judicial notice of NHTSA documents).

25   The Ortloff Declaration was filed in the *Elkins* matter and highlights the differences

26   between the "Campaign" implemented by MBSUA in this case and the underly complete relief

27   provided by American Honda Motor Co., Inc. that was relied on by the court in *Elkins v. Am.*

28   *Honda Motor Co.*, 8:19-cv-00818-JLS-KES, 2020 WL 4882412 (C.D. Cal. July 20, 2020).

1    And the settlement agreement in *Audit Query 18-004 Mercedes-Benz USA, LLC* is a

2  public record and available on the NHTSA website

3  ([https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/final_signed_nhtsa_mbusa_settlemen](https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/final_signed_nhtsa_mbusa_settlement_2019_dec_17.pdf)

4  [t_2019_dec_17.pdf](https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/final_signed_nhtsa_mbusa_settlement_2019_dec_17.pdf)) and thus its is not subject to reasonable dispute because it "can be accurately

5  and readily determined from sources whose accuracy cannot reasonably be questioned." FRE

6  201(b).

7

8  Dated:       December 4, 2020          CONN LAW, PC

9                                        /s/ Elliot Conn
10                                        Elliot Conn, Bar No. 279920
                                         Attorneys for Plaintiff
11                                        YING YING GUAN and the putative class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1   LEWIS BRISBOIS BISGAARD & SMITH LLP
    ERIC Y. KIZIRIAN, SB# 210584
2     E-Mail: Eric.Kizirian@lewisbrisbois.com
    MICHAEL K. GRIMALDI, SB# 280939
3     E-Mail: Michael.Grimaldi@lewisbrisbois.com
    633 West 5th Street, Suite 4000
4   Los Angeles, California 90071
    Telephone: 213.250.1800
5   Facsimile: 213.250.7900

6   Attorneys for Defendants
    American Honda Motor Co., Inc. and
7   Honda North America, Inc.

8                        UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11  DAVID ELKINS AND LAURA ELKINS,        Case No. 8:19-CV-00818 JLS (KESx)
12  PATRICK DE FONTBRUNE, HONGLIANG
    FU, RACHEL FAIRCHILD, RYAN MANGLE,    Hon. Josephine L. Staton
13  AMADO MUNOZ, BEN HU, CHARLOTTE
    KAPETENAKIS, REGAN FARLEY, SHARON     DECLARATION OF BRAD ORTLOFF IN
14  BECK, individually and on behalf of all   SUPPORT OF DEFENDANTS AMERICAN
    others similarly situated,            HONDA MOTOR CO., INC.'S AND
15                                        HONDA NORTH AMERICA, INC.'S
                 Plaintiffs,              MOTION TO DISMISS PLAINTIFFS'
16                                        FIRST AMENDED COMPLAINT
            vs.
17
    AMERICAN HONDA MOTOR CO., INC., a
18  California corporation, and HONDA
    NORTH AMERICA, INC., a California
19  corporation,

20               Defendants.

21

22

23

24

25

26

27

28

    4832-5624-0554.2                                    8:19-CV-00818 JLS (KESx)
    DECLARATION OF BRAD ORTLOFF IN SUPPORT OF DEFENDANTS AMERICAN HONDA MOTOR CO., INC.'S AND HONDA
       NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

I, Brad Ortloff, declare as follows:

1.      I have been employed at American Honda Motor Co., Inc. since December 6, 1999. I am currently the Manager of the Campaigns and Recalls department at American Honda. In that capacity, my duties are defined broadly to include campaign setup, outreach strategy, dealer and customer notification and reporting. I am intimately familiar with American Honda's operations with respect to the implementation of market actions such as warranty extensions, product updates and recalls. The facts set forth here are of my own personal knowledge and based on a reasonable investigation. If sworn, I would competently testify thereto.

2.      On August 9, 2019, Honda issued its Service Bulletin No. 19-091, entitled "Warranty Extension: A/C Condenser Leaking." Attached as **Exhibit 1** is a true and correct copy of this Service Bulletin.

3.      The warranty extension set forth in Service Bulletin No. 19-091 has already taken effect. Consumers (including plaintiffs) will receive notice of the warranty extension in early November 2019.  Honda's warranty extension includes a Reimbursement Form for previously incurred (covered) warranty expenses. Attached as **Exhibit 2** is a true copy of the notice to consumers of the warranty extension and the accompanying Reimbursement Form.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Executed on October 18, 2019.


_____

Brad Ortloff

DECLARATION OF BRAD ORTLOFF IN SUPPORT OF DEFENDANTS AMERICAN HONDA MOTOR CO., INC.'S AND HONDA NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# EXHIBIT 1



# *Service Bulletin*

## 19-091

**August 9, 2019**  <span style="float:right">Version 1</span>

# Warranty Extension: A/C Condenser Leaking

## AFFECTED VEHICLES

| Year | Model | Trim | VIN Range |
|------|-------|------|-----------|
| 2016 | Civic | ALL | Check the iN VIN status for eligibility. |
| 2017 | Civic | ALL | Check the iN VIN status for eligibility. |
| 2018 | Civic | ALL | Check the iN VIN status for eligibility. |

## BACKGROUND

American Honda is extending the warranty on the A/C condenser to 10 years from the original date of purchase with unlimited miles.

This warranty only covers vehicles that have a defective A/C condenser from the factory. The A/C condenser was not manufactured to specification. As a result, tiny holes may develop in the condenser tube walls that allows the refrigerant to leak out.

The warranty extension does not apply to any vehicle that has a leaking condenser due to foreign object damage.

The warranty extension does not apply to any vehicle that has ever been declared a total loss or sold for salvage by a financial institution or insurer, or has a branded or similar title under any state's law.

## CUSTOMER NOTIFICATION

Owners of affected vehicles will be sent a notification of this campaign.

Do an iN VIN status inquiry to make sure the vehicle is shown as eligible.

## CORRECTIVE ACTION

Do the inspection procedure and, if there is a leak in the A/C condenser that is caused by corrosion, replace it.

**CUSTOMER INFORMATION:**The information in this bulletin is intended for use only by skilled technicians who have the proper tools, equipment, and training to correctly and safely maintain your vehicle. These procedures should not be attempted by "do-it-yourselfers," and you should not assume this bulletin applies to your vehicle, or that your vehicle has the condition described. To determine whether this information applies, contact an authorized Honda automobile dealer.

## PARTS INFORMATION

| Part Name | Part Number | Quantity |
|---|---|---|
| Condenser Assembly (2.0 L) | 80100-TBA-A01 | 1 |
| Condenser Assembly (1.5 L) | 80100-TBC-A01 | 1 |
| O-Ring (1/2 in) | 80872-SN7-003 | 1 |
| O-Ring (8 mm) | 80873-ST7-000 | 1 |

## REQUIRED MATERIAL

NOTE

Once the POE Compressor Oil container is opened, throw it away; do not store it or reuse it.

| Part Name | Part Number | Quantity |
|---|---|---|
| POE Compressor Oil | 38899-RLV-A01 | 1 |
| 1234yf Refrigerant | 08799-0003 | Refer to service bulletin 16-064 for calculation instructions. |

## TOOL INFORMATION

| Tool Name | Tool Number | Quantity |
|---|---|---|
| R-1234yf A/C Recover, Recycle, Recharge Machine | ROB421234 | 1 |
| R-1234yf Leak Detection Kit | TRP1234yf | 1 |
| Dual Mode Refrigerant Gas Leak Detector or Infrared Refrigerant Leak Detector | ROBLD020 or ROB22791 | 1 |

## WARRANTY CLAIM INFORMATION

### Civic 1.5 L & 2.0 L

| Operation Number | Description | Flat Rate Time | Defect Code | Symptom Code | Template ID | Failed Part Number |
|---|---|---|---|---|---|---|
| 6165A0 | Inspect the A/C system for leaks. | 0.5 hr | 6C300 | G5O00 | A19091A | 80100-TBA-A01 |

### Civic 1.5 L Only

| Operation Number | Description | Flat Rate Time | Defect Code | Symptom Code | Template ID | Failed Part Number |
|---|---|---|---|---|---|---|
| 6165A0 | Inspect the A/C system for leaks. | 0.5 hr | 6C300 | G5O00 | A19091B | 80100-TBA-A01 |
| A | Replace the condenser (1.5 L). | 1.5 hr | | | | |

### Civic 2.0 L Only

| Operation Number | Description | Flat Rate Time | Defect Code | Symptom Code | Template ID | Failed Part Number |
|---|---|---|---|---|---|---|
| 6165A0 | Inspect the A/C system for leaks. | 0.5 hr | 6C300 | G5O00 | A19091C | 80100-TBA-A01 |
| B | Replace the condenser (2.0 L). | 1.6 hr | | | | |

Skill Level: Repair Technician

## INSPECTION PROCEDURE

1. Check if the condenser is leaking.

   **NOTE**

   For additional information on how to check if the condenser is leaking, go to service bulletin 07-030 *A/C Leak Detection* and 18-073 *Bosch ROBLD020 Dual Mode Refrigerant Gas Leak Detector*.

   1.1. Start the engine.

   1.2. Turn on the A/C, and set the climate control to MAX COOL.

   **NOTE**

   If the refrigerant level is low, the compressor may not activate. Fill the system with enough refrigerant to engage the compressor. However, if there is a leak in the system, the vacuum leak test may fail and you will be unable to add refrigerant to the system. In that case, use the ultrasonic leak detector with the system in a vacuum to identify where the leak is. Watch the *Tech2Tech* video, "Check for A/C Leaks with the Ultra Sonic Leak Detector" on how to use the ultra sonic leak detector.

   1.3. Make sure there are no leaks using your dealer's leak detection tool. If a leak is not detected, it may be necessary to add dye to assist in locating the leak.

   *Is the condenser leaking?*

   Yes - Go to the next step.

   No - This bulletin does not apply, continue with normal troubleshooting.

2.  Make sure the leak is not caused by a foreign object.

    There are several types of damage that can result in a leak. This bulletin is looking for leaks that are caused by the manufacturing process. Damage like those caused by foreign objects that break the tube face are not covered under this warranty extension. A foreign object may damage the fins, but as long as the tube face is not impacted, the leak will be covered under this warranty extension.

    •  Tube face damaged by foreign object - This bulletin does not apply, continue with normal troubleshooting.

    •  Foreign object damage but tube face is not damaged, or the tube face is corroded - Go to REPAIR PROCEDURE.

    •  No damage or corrosion found but the condenser is leaking - Go to REPAIR PROCEDURE.

*Foreign Object Did Not Damage Tube Face*
*Covered Under Warranty Extension*

*Foreign Object Damaged Tube Face*
*Not Covered Under Warranty Extension*



Fin damage without impact
damage to the tube face.



Impact damage
on the tube face.

**REPAIR PROCEDURE**

> **NOTE**
>
> Make sure you review the precautions when working with the A/C system.

1. Follow the equipment manufacture's instructions and connect the A/C recover/recycle/recharge machine to the high-pressure service port and the low-pressure service port.



**LOW PRESSURE SERVICE PORT**

**HIGH PRESSURE SERVICE PORT**

2. Recover the refrigerant from the A/C system.

3. Measure the amount of refrigerant oil removed from the A/C system after the recovery process is completed. Make sure to put the same amount of new refrigerant oil back into the A/C system before charging.

4. Remove the front grille cover.



**CLIPS**
7 Places.

**FRONT GRILLE COVER**
Remove.

5. Remove the front bumper.
   *2/4 DOOR*



**HOOKS**
4 Places.

**BOLT**
2 Places.
9.3 N·m
(6.9 lb-ft)

**HEX BOLT**
2 Places.
9.3 N·m
(6.9 lb-ft)

**CLIP**
7 Places.

**SCREW**
4 Places.

**FRONT BUMPER**

*5 Door*



**HOOKS**
4 Places.

**BOLT**
2 Places.
9.3 N·m
(6.9 lb-ft)

**HEX BOLT**
2 Places.
9.3 N·m
(6.9 lb-ft)

**CLIP**
7 Places.

**SCREW**
4 Places.

**FRONT BUMPER**

5.1.  Pull the bumper out by the wheel well to release it from the hooks on the side spacer.



**HOOKS**

**FRONT BUMPER**

5.2. With the help of an assistant, pull the front bumper away from the side spacer, then release the bumper from the hooks on the upper beam.



5.3. **With fog light only**: Disconnect the connectors.



5.4. Remove the bumper.

6. Remove the front bumper upper beam.

*1.5 L*



**BOLT**
9.3 N·m
(6.9 lb-ft)

**DISCHARGE HOSE**
Disconnect.

**O-RING**
Replace.

**BOLT**
2 Places.
22 N·m
(16 lb-ft)

**BOLT**
2 Places.
9.3 N·m
(6.9 lb-ft)

**CLIP**
2 Places.

**FRONT BUMPER UPPER BEAM**
Remove.

**BOLT**
4 Places.
7.0 N·m
(5.2 lb-ft)

**A/C CONDENSER**
Remove.

**CLIP**
4 Places.

**FRONT BUMPER MIDDLE INDUCTION PLATE**
Remove.

**RECEIVER PIPE**
Disconnect.

**O-RING**
Replace.

**BOLT**
9.3 N·m
(6.9 lb-ft)

**2.0 L**



7. **With front bumper middle induction plate only**: Remove the front bumper middle induction plate.

8. Remove the discharge hose from the condenser.

9. Remove the receiver pipe from the condenser.

10. Remove the A/C condenser.

11. Install the new A/C condenser assembly.

12. Install all removed parts in the reverse order or removal.

- Receiver pipe

- Discharge hose

- Front bumper induction plate (if removed)

- Front bumper upper beam

- Connect fog light (if disconnected)

- Front bumper

- Front grille cover

13. Add the necessary amount of refrigerant oil to the A/C system. Refer to *A/C Refrigerant Oil Replacement* in the service information.

14. Add the necessary amount of refrigerant to the A/C system. Refer to *A/C Refrigerant Recovery/Evacuation/Charging* in the service information.

15. Make sure there are no refrigerant leaks and the A/C system functions properly.

END

# EXHIBIT 2

November 2019

**Warranty Extension: A/C Condenser Leaks**

Dear Honda Owner:

This warranty only covers vehicles that have a defective air conditioning condenser installed at the factory. The A/C condenser was not manufactured to specification. As a result, tiny holes may develop in the condenser tube walls that allow refrigerant to leak out. The warranty will not apply to any vehicle that has leaking condenser due to foreign object damage.

American Honda is extending the warranty on the A/C condenser to 10 years from the original date of purchase with no mileage limit.

This warranty extension will not apply to any vehicle that has ever been declared a total loss or sold for salvage by a financial institution or insurer, or has a branded or similar title under any state's law.

**What should you do?**
If the vehicle's A/C does not blow cold air, go to any authorized Honda dealer to have the vehicle inspected. If the A/C condenser is leaking because it was not manufactured to specification, it will be replaced. This work will be done **for free**. Please plan to leave your vehicle at the dealer for at least a day to allow them flexibility in scheduling.

**Lessor Information**
Please forward a copy of this notice to the lessee.

**What to do if you feel this notice is in error**
Our records show that you are the current owner or lessee of a 2016-18 Civic involved in this warranty extension. If this is not the case, or the name/address information is not correct, please fill out and return the enclosed, postage-paid Information Change Card. We will then update our records.

If you previously paid to have your A/C condenser replaced because the A/C did not blow cold air, you may be eligible for reimbursement, even if you no longer own the vehicle. Refer to the attached reimbursement instructions for eligibility requirements and the reimbursement procedure.

**If you have questions**
If you have any questions about this notice, or need assistance with locating a Honda dealer, please call American Honda's Customer Support & Campaign Center at 1-888-234-2138. You can also locate a dealer online at *www.Hondacars.com*. Customers in U.S. territories, please contact your local distributor/dealer.

We apologize for any inconvenience this campaign may cause you.

Sincerely,

**American Honda Motor Co., Inc.**

Campaign #6C3 / Service Bulletin #19-091

# Instructions for Reimbursement
# Honda Warranty Extension 6C3

## Eligibility Requirements

You may be eligible for reimbursement if you meet all the requirements:

- You paid to have your vehicle's A/C condenser replaced because of leaks caused by the manufacturing process.
- **Repairs were made prior to the notice date; repairs made after the notice date must be administered by a Honda dealer.**
- You owned the vehicle at the time of repair. You are still eligible if you no longer own the vehicle.
- You provide a paid invoice.

**Please complete this form and attach the items listed below. Failure to include all requested information will result in delays and possible denial of your request.**

### Your invoice must include:

1. Vehicle Identification Number (VIN)
2. Name and Address of the repair facility
3. Diagnosis and itemized cost of repair – parts and labor
4. Date the work was completed
5. Proof of Payment - copy of the canceled check, bank statement, or credit card receipt showing that you paid for the repair. Cash payments must be documented on the invoice and a cash payment receipt must be provided. Please submit copies only. These documents will not be returned.

Repairs were performed at (check one): ☐ Authorized Honda Dealer ☐ Independent Repair Facility

## Return Your Reimbursement Request Form and Requested Documents

Via Fax: **(310) 224-6051**

Via Mail: American Honda Motor Co., Inc.
American Honda Customer Support & Campaign Center
P.O. Box 2964
Torrance, CA 90509-2964

**(Fill-in the information below – Please print)**

| | |
|---|---|
| Your Name: | |
| Home Address: | Apt.#: |
| City: | State: ZIP: |
| Daytime Phone: | Cell Phone: |
| Vehicle Identification Number | |
| e-mail Address: | |
| Total Amount Requested: $ | |

**Repair cost only. Incidental expenses (rental, fuel, loss of wages, etc.) are not covered.**

**If you have any questions about this form, please contact American Honda's Customer Support & Campaign Center at 1-888-234-2138**

# Exhibit B

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION**
1200 New Jersey Avenue SE
Washington, DC 20590

| | |
|---|---|
| **In re:** | ) |
| | ) |
| | ) |
| AQ18-004 | ) |
| Mercedes-Benz USA, LLC | ) |
| | ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into between the National Highway Traffic Safety Administration ("NHTSA" or "the Agency"), an operating administration of the U.S. Department of Transportation, and Mercedes-Benz USA, LLC ("MBUSA"), to resolve Audit Query 18-004 (the "Audit Query").

WHEREAS, NHTSA's Office of Defects Investigation (ODI) opened the Audit Query on October 22, 2018, to investigate certain recall management issues. *See* AQ 18-004 Opening Resume. The Audit Query was also intended to address MBUSA's practices involving "planned owner notification dates, planned dealer notification dates, and estimated percentage of units with a defect/noncompliance." *See id;*

WHEREAS, NHTSA thereafter issued an associated Information Request to which MBUSA responded in writing, in part on November 12, 2018 and in part on December 14, 2018;

WHEREAS, NHTSA reviewed MBUSA's responses and in April 2019, sent MBUSA additional questions relating to those responses as well as a series of further questions;

WHEREAS, MBUSA and its then parent company, formerly Daimler AG and now known as Mercedes-Benz AG (and referred to herein as "MBAG") have met with NHTSA on multiple occasions since submitting the written responses;

1

WHEREAS, MBAG and MBUSA had initiated numerous efforts as early as 2015 to optimize its recall management processes, including the launch of a global internal program to increase employees' awareness about vehicle safety and compliance. These efforts also involved the development of an automated tool for recall administration which MBUSA began to develop in 2017 and launched in 2019;

NOW THEREFORE, the parties set forth the basis for the Settlement Agreement and the terms under which they have agreed to resolve the matter.

**Basis for the Settlement Agreement**

1.      From 2016-2018, the time period covered by the Audit Query, MBAG and MBUSA reported a total of 101 safety-related defects or noncompliances necessitating recalls in the United States. In some of those recalls, MBUSA missed certain deadlines as set forth below. In all cases, consumers were notified of the recall, the recall campaign was launched as soon as parts became available, and there was no effort to mislead the Agency with regard to any recalls.

2.      Notwithstanding MBUSA's explanations and positions, NHTSA has determined as follows:

      a.      In six recalls, the customer notifications were mailed beyond the 60-day deadline from the submission of the Part 573 notification report, as required by 49 C.F.R. § 577.7(a)(1).

            (i)      In five of those recalls, MBUSA mailed the notification letters to customers between 61 and 66 days after submitting the Part 573 notification report to NHTSA.

2

      (ii)     In the remaining recall, MBUSA mailed the notification letter to customers 80 days after submitting the Part 573 notification report to NHTSA.

b.  In 22 recalls, MBUSA mailed all customer notifications but did not upload the final version of those documents to the recalls portal within five business days as required by 49 C.F.R. § 573.6(c)(10). Many of those document upload oversights were pointed out during NHTSA's 2018 Recall Management Division audit, and MBUSA quickly uploaded the documents thereafter. MBUSA's automated recall management tool will assist in assuring that such deadlines are strictly adhered to in the future.

c.  NHTSA identified six Quarterly Reports, involving four recalls, which MBUSA did not submit within the schedule set forth in 49 C.F.R. § 573.7(d). These do not include Quarterly Reports for which MBUSA followed NHTSA's published guidance document with regard to campaigns launched near the end of a quarter.

d.  In 14 recalls, MBUSA indicated in its initial Part 573 notification report that the estimated launch date for the recall was unknown, but did not update that information in the recall portal when the recall launch date later became apparent as required by 49 C.F.R § 573.6(a). Prospectively, MBUSA will ensure that all updates to the Part 573 notification reports are timely provided.

e.  For recalls 18V-405 and 18V-610, NHTSA has alleged that MBUSA did not submit the report within five business days of when it knew or should have known that the noncompliance existed as required by 49 U.S.C. § 30118 and

49 C.F.R. § 573.6(b). With regard to 18V-405, MBAG initially had concluded that all affected vehicles were contained and remedied while within its direct control, and submitted the Part 573 report upon learning that certain vehicles had not been contained. With regard to 18V-610, MBAG submitted its Part 573 report upon completing its investigation.

    f.   NHTSA also raised concerns with regard to the efficacy of MBUSA's VIN Lookup Tool, the requirements for which are contained in 49 C.F.R. § 573.15. NHTSA's concerns have arisen from potential service interruptions to the VIN lookup tool. MBUSA has requested that NHTSA collaborate to ensure NHTSA's and MBUSA's technical interfaces are effectively communicating.

**Civil Penalty**

3.     The Secretary of Transportation has the authority to impose and to compromise the amount of civil penalties under the Safety Act, taking certain factors into account. *See* 49 U.S.C. § 30165. This authority has been delegated to NHTSA. *See* 49 C.F.R. § 1.95.

4.     Pursuant to 49 U.S.C. § 30165, NHTSA and MBUSA have agreed that MBUSA shall, in order to resolve the Audit Query, pay the United States a civil penalty not to exceed $20 million (the "Total Civil Penalty").

    a.   Of this total amount, MBUSA will pay $13 million as a lump sum payment within 45 days of the effective date of this Settlement Agreement (the "Lump Sum Payment") in accordance with instructions provided by NHTSA.

    b.   MBUSA shall only be liable for payment of the remaining $7 million (the "Abeyance Funds") in accordance with the conditions in Paragraph 7 below. MBUSA

4

shall be released from any amount of the Abeyance Funds remaining at the expiration or termination of this Settlement Agreement as set forth in Paragraph 7.

      c.     If MBUSA fails to make the Lump Sum Payment set forth above, or any payments of the Abeyance Funds as may become due in accordance with Paragraph 7 on or before their respective due dates, MBUSA shall be in default of this Settlement Agreement and any unpaid amount of the Lump Sum Payment, or any Abeyance Funds as may become due in accordance with Paragraph 7, shall become immediately due and owing.  In that event: (i) MBUSA agrees not to contest any collection action undertaken by NHTSA or the United States pursuant to applicable law, including the Claims Collection Act and the U.S. Department of Transportation's regulations, 49 C.F.R. § 89, either administratively or in any court, and (ii) MBUSA affirmatively waives any and all defenses or rights that would otherwise be available to it in any such proceeding.  In addition, in such a proceeding, MBUSA shall pay the United States all reasonable costs of collection and enforcement, including attorneys' fees and expenses.  This provision does not preclude MBUSA from contesting the imposition of any amounts of the Abeyance Funds on the merits.

    5.     In determining the amount of an appropriate civil penalty, NHTSA has considered the substantial financial investment that MBUSA has made in the development and rollout of its automated recall management tool, as well as the hiring of additional personnel and ongoing trainings, which predated the institution of the Audit Query.  NHTSA additionally considered the civil penalty factors set forth in 49 U.S.C. § 30165(c), and has stated that it has taken MBUSA's views of how those factors should be applied into account.

**Settlement Administration**

6.    Assessment Meetings.  On a quarterly basis, beginning with the quarter following the execution of this Settlement Agreement, MBUSA will meet with NHTSA, either in person, by phone, or electronically, to discuss MBUSA's performance under the Safety Act with respect to recalls that MBUSA has submitted to NHTSA within the last quarter, as well as the operation and performance of the VIN Lookup Tool ("Assessment Meetings").

a.    MBUSA will be prepared to discuss the recall administration issues that are pertinent to the Audit Query, namely, the timely issue of customer notifications, upload of representative copies of recall-related communications, performance of the VIN Lookup Tool, information and details in the Part 573 Reports, and submission of quarterly completion rate reports.

b.    The Assessment Meetings will occur on a quarterly basis for the term of this Settlement Agreement unless the parties agree to a different meeting frequency.

c.    NHTSA agrees to work with MBUSA in good faith to promptly raise concerns as set forth in Paragraph 10.  To that end, within twenty-one (21) days following each Assessment Meeting, NHTSA may provide feedback as to whether MBUSA has adequately performed its obligations under the Safety Act with regard to the recalls reviewed during the Assessment Meeting, and will work in good faith with MBUSA to resolve any concerns about MBUSA's performance.

7.    Deficiency Notice, Opportunity to Cure, and Payment of Abeyance Funds.  In addition to the general review of recall management activities discussed at Assessment Meetings, should NHTSA identify any concerns involving recall decision-making or implementation, or a perceived failure of the VIN Lookup Tool or compliance with 49 C.F.R. § 573.15, NHTSA

6

agrees to inform MBUSA within twenty-one (21) days from the time NHTSA's enforcement personnel first became aware of the concern using reasonable due diligence (the "Deficiency Notice").

   a. To the extent that NHTSA timely communicates a Deficiency Notice, MBUSA will have twenty-one (21) days, or such other time period as mutually agreed by MBUSA and NHTSA, from the date on which the problem, issue, or concern was communicated to MBUSA by NHTSA ("Cure Period") to rectify or cure the issue ("Opportunity to Cure").

   b. In response to the Deficiency Notice and within the Cure Period, MBUSA will provide an explanation of the issue, along with supporting documentation.  Should there be a reasonable dispute over whether the VIN Lookup tool is in compliance or, whether MBUSA's recall management actions, recall decision-making or implementation warrants a Deficiency Notice, the parties agree to reasonably discuss the issue and how best to resolve the concern.

   c. In the event that (i) MBUSA invokes the Opportunity to Cure a recall management issue more than once over the term of the Settlement Agreement (and once more should NHTSA extend the term for a second year) and/or (ii) the VIN Lookup Tool cannot be brought into compliance during the Cure Period, then MBUSA may become liable to pay a portion of the Abeyance Funds for each day until such issue is rectified or cured or until the VIN Lookup Tool is brought into compliance, as applicable.  Payment of the Abeyance Funds shall be prorated at a daily rate equal to $7 million divided by the 730 days in the Settlement Term (equal to $9,575 per day), with payment due within

7

forty-five (45) days from the date MBUSA becomes liable for payment of such Abeyance Funds.

8.     In the event that any Abeyance Funds become due and owing, these shall constitute compromised civil penalties pursuant to 49 U.S.C. § 30165(b).  Such payments will be made by electronic funds transfer to the U.S. Treasury, in accordance with the instructions provided by NHTSA and as set forth in this Settlement Agreement.

9.     NHTSA and MBUSA have discussed that MBUSA and MBAG are currently developing more robust procedures with regard to reporting noncompliance concerns.  MBAG is also currently reviewing recent compliance issues.  MBUSA agrees that it will keep NHTSA informed of the company's progress and any compliance concerns raised by its ongoing review.

10.    NHTSA will apply these Settlement Administration provisions in a fair and just manner and will communicate with MBUSA in good faith.

**Term of the Settlement Agreement**

11.    The term of this Settlement Agreement is one year from the date of execution.  At the end of the term, NHTSA shall have the opportunity at its discretion to extend the term, and therefore the Assessment Meetings as set forth above, for up to an additional year if NHTSA reasonably decides that MBUSA should not be released from such obligation based on its performance, feedback from NHTSA and any Deficiency Notices issued over the course of the term.  If NHTSA opts to extend the term, it shall provide MBUSA notice of its intention to do so no later than 30 days before the expiration of the term.

**Miscellaneous**

12.    This Settlement Agreement cannot be modified, amended or waived except by an instrument in writing signed by all parties.

8

13.     Nothing in this Settlement Agreement shall be interpreted or construed in a manner inconsistent with, or contravening, any federal law, rule, or regulation at the time of the execution of this Settlement Agreement, or as amended thereafter.

14.     None of the specific reporting obligations described in this Settlement Agreement relieve MBUSA of its obligation to submit any other reports or satisfy any other obligations required by law.

15.     This Settlement Agreement shall be effective upon execution by both MBUSA and NHTSA.  Any breach of the obligations under this Settlement Agreement may, at NHTSA's option, be immediately enforceable in any United States District Court.

16.     This Settlement Agreement has been negotiated and prepared by both MBUSA and NHTSA.   If any of the Settlement Agreement's provisions require a court's interpretation, no ambiguity found in this Settlement Agreement shall be construed against the drafter.

17.     The parties who are the signatories to this Settlement Agreement have the legal authority to enter into this Settlement Agreement, and each party has authorized its undersigned to execute this Settlement Agreement on its behalf.

18.     Should any condition or other provision contained herein be held invalid, void or illegal by any court of competent jurisdiction, it shall be deemed severable from the remainder of this Settlement Agreement and shall in no way affect, impair or invalidate any other provision of this Settlement Agreement.

19.     This Settlement Agreement shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Settlement Agreement.

20.     This Settlement Agreement may be executed in counterparts, each of which shall be considered effective as an original signature.

21.     This Settlement Agreement is a fully integrated agreement and shall in all respects be interpreted, enforced and governed under the federal law of the United States.  This Settlement Agreement sets forth the entire agreement between the parties with regard to the subject matter hereof.  There are no promises, agreements, or conditions, express or implied, other than those set forth in this Settlement Agreement.

[SIGNATURE PAGES FOLLOW]

NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION,
U.S. DEPARTMENT OF TRANSPORTATION

Dated: _**12/17**_, 2019          By: _____

James C. Owens
Acting Administrator

Dated: _**12/17**_, 2019          By: _____

Jonathan C. Morrison
Chief Counsel

Dated: _**12/17**_, 2019          By: _____

Christopher S. Perry
Acting Assistant Chief Counsel
   for Litigation and Enforcement

Dated: _December 17_, 2019          By: _____

Thomas P. Healy
Trial Attorney

11

MERCEDES-BENZ USA, LLC

Dated: _12-19-19_ 2019          By: _____

Christian Treiber
Vice President Customer Services
Mercedes-Benz USA, LLC

By: _____

Nicholas Speeks
President & CEO
Mercedes-Benz USA, LLC

Dated: _12-17_, 2019          By: _____

Jacqueline Glassman
Christie Iannetta
King & Spalding, LLP
Counsel for Mercedes-Benz USA, LLC

12