CONN LAW, PC
ELLIOT CONN          Bar No. 279920
354 Pine Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 417-2780
Facsimile: (415) 358-4941

VARNELL & WARWICK, P.A.
JANET R. VARNELL (admitted *pro hac vice*)
BRIAN W. WARWICK (admitted *pro hac vice*)
MATTHEW T. PETERSON (admitted *pro hac vice*)
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301

Attorneys for Plaintiff Ying Ying Guan and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| YING YING GUAN, individually, on behalf of all others similarly situated, and on behalf of the general public | Case No. 4:20-cv-05719 (JST) |
| | CLASS ACTION |
| Plaintiff. | **THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| vs. | |
| MERCEDES-BENZ USA, LLC and DAIMLER AG | **DEMAND FOR JURY TRIAL** |
| Defendants. | |
| _____/ | |

Pursuant to Federal Rule of Civil Procedure Rule 15(a)(2), and with the written consent of Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively "Mercedes Defendants"), Plaintiff Ying Ying Guan ("Guan"), on behalf of herself and all others similarly situated, and on behalf of the general public, hereby amends her complaint and complains against the Mercedes Defendants, and in support there of states:

## INTRODUCTION

1.     This is a class action against the Mercedes Defendants brought on behalf of a class of

1
THIRD AMENDED CLASS ACTION COMPLAINT

1  California residents who purchased either a new or a Mercedes-Benz Certified Pre-Owned 2012-

2  2014 model year Mercedes-Benz C250 Sedan vehicle, a 2012-2015 model year Mercedes-Benz

3  C250 Coupe, or a 2012-2015 Mercedes-Benz SLK250 vehicle (the "Subject Vehicles").

4  2.      As detailed herein, the Mercedes Defendants wrongfully and intentionally concealed a

5  latent defect in the camshaft adjusters of the Subject Vehicles, which causes the camshaft

6  adjusters to fail prematurely, forcing Plaintiff and members of the Class to incur substantial out

7  of pocket costs to replace the damaged camshaft adjusters and attendant engine parts. These

8  repairs can cost upwards of $10,000.

9  3.      The Subject Vehicles' intake and exhaust camshaft adjusters control the engine's intake

10 and exhaust camshafts respectively. The camshafts and camshaft adjusters are integral engine

11 parts that regulate the opening and closing of the valves that allow the air/fuel mixture into the

12 engine and the exhaust out of the engine. When either camshaft adjuster malfunctions, the engine

13 will operate poorly and have trouble starting; and if one completely fails, the engine will not run.

14 4.      Because of this, the camshaft adjuster defect presents a significant safety risk for Plaintiff

15 and members of the Class. If either of the camshaft adjusters completely fail, the vehicle loses

16 engine power, which causes a loss in the ability to accelerate and maintain speed. The drivers

17 and occupants of the Subject Vehicles are at risk for rear-end collisions and other accidents as a

18 result of the Mercedes Defendants' failure to disclose the existence of the camshaft adjusters'

19 design defect and corresponding safety risk.

20 5.      Despite the Mercedes Defendants' knowledge of the camshaft adjuster defect, prior to the

21 filing of this lawsuit, the Mercedes Defendants never disclosed to Plaintiff and members of the

22 Class that the defect exists or that drivers and occupants of the Subject Vehicles are at risk.

23 Notwithstanding the fact that the camshaft adjusters should operate for the anticipated life of the

24 engine, prior to the filing of this lawsuit, the Mercedes Defendants refused to repair or replace

25 the camshaft adjusters outside of the time periods covered by the Mercedes Defendants' express

26 written warranties.

27 6.      According to the Mercedes Defendants' Maintenance Booklet for the Subject Vehicles,

28 the camshaft adjusters are expected to last for the useful life of the engine, or at least 170,000

1    miles, without the need for maintenance, repair, or replacement. Owners of the Subject Vehicles

2    were provided owner's manuals and Maintenance Booklets that do not show any camshaft

3    adjuster inspection or maintenance within the first 170,000 miles.[1]

4    7.      At all relevant times, the Mercedes Defendants knew or should have known of the

5    existence and manifestation of this defect from its own Repair Campaign Bulletins, Technical

6    Service Bulletins, DTB/Xentry Bulletins, other internal Mercedes communications, consumer

7    complaints, high number of warranty repairs on early model Subject Vehicles and predecessor

8    vehicles, posts on Mercedes enthusiast forums, watchdog reports, media articles, and even

9    governmental regulatory databases. In addition, the Mercedes Defendants' authorized

10   dealerships, acting as the Mercedes Defendants' agents for purposes of repairing the Subject

11   Vehicles, have received an inordinate number of complaints and warranty repair requests from

12   customers regarding premature failure of the camshaft adjusters on both the Subject Vehicles and

13   earlier Mercedes model vehicles, both during, and outside, the warranty period. Despite the

14   pervasive nature of the design defect and the tremendous cost of repair, prior to the filing of this

15   lawsuit, the Mercedes Defendants refused to cover the cost of the repairs for consumers for

16   failures that occurred outside of the express warranty period.

17   8.      Also, despite this knowledge, the Mercedes Defendants have not disclosed the latent

18   design defect to consumers, and will continue to hide the design defect.

19   9.      As a result of the Mercedes Defendants' failure to take appropriate corrective or remedial

20   action, and concealment and affirmative misrepresentation of the existence of this design defect

21   from unsuspecting owners, the Mercedes Defendants have caused Plaintiff and members of the

22   Class to bear expenses and costs they otherwise should not have had to bear in violation of

23   Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, the Song-Beverley Consumer

24   Warranty Act, California Civil Code §1790, *et seq.*, the Consumers Legal Remedies Act

25   ("CLRA"), California Civil Code §1750, *et seq.*, and California's Unfair Competition Law

26   ("UCL"), California Business and Professions Code §17200, *et seq.*

27

28

---

[1] Had the camshaft adjusters had intended shorter lifespan, the replacement schedule would have been included in the Maintenance Booklet. *See* https://www.autobild.de/artikel/nockenwelle-schaeden-symptome-kosten-13368941.html

10.     By virtue of this class action, Plaintiff seeks to enjoin the Mercedes Defendants' unlawful and unfair practices and to require the Mercedes Defendants to compensate Plaintiff and members of the Class for the losses they have incurred. Plaintiff also seeks attorneys' fees, costs, and expenses.

**PARTIES**

11.     Plaintiff Ying Ying Guan is an individual, over 18 years of age, who purchased a 2014 Mercedes-Benz C250. At all times relevant herein, Plaintiff is a California citizen and resident of San Francisco County, California.

12.     Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware company with its principal place of business at 1 Mercedes-Benz Drive, Sandy Springs, Georgia 30328-4301. MBUSA are citizens of states different from the Plaintiff including foreign entities as listed in its corporate disclosure statement. Defendant MBUSA is a subsidiary of Daimler AG, the manufacturer of Mercedes branded vehicles. At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and has been subject to Daimler's control. Founded in 1965, Mercedes-Benz USA, LLC is responsible for the distribution and marketing of all Mercedes and Maybach automobiles within the United States. MBUSA was the entity responsible for injecting the Mercedes vehicles purchased by Plaintiff and the class into the United States stream of commerce.

13.     At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles designed and manufactured by Daimler AG, including plaintiff's vehicle, in California and throughout the United States.

14.     Defendant Daimler AG (herein "Daimler") is a foreign for-profit German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing vehicles, including the subject vehicle purchased by plaintiff.

15.     According to MBUSA, Daimler is solely responsible for designing its vehicles and establishing the terms of the written warranties, including the Subject Vehicles at issue here,

1   therefore Daimler is an essential party to this action. Upon information and belief, Daimler has,

2   and at all relevant times had, the contractual right to exercise, and in practice has exercised,

3   control over MBUSA's work, including, but not limited to, the manner of marketing, the scope

4   of written warranties and representations made and facts withheld from consumers and the public

5   about defects in the camshaft adjusters of the Subject Vehicles. Daimler has held MBUSA out as

6   its agent for all purposes in the United States, but especially for sales and marketing of its

7   vehicles and for ongoing management of relationships with purchasers of its vehicles. Daimler

8   established MBUSA as its wholly owned subsidiary company and named MBUSA with its

9   official "Mercedes-Benz" title. It provides MBUSA with marketing and technical materials

10  avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as

11  nothing less than Daimler's presence in the United States for purposes of selling "Mercedes-

12  Benz" branded vehicles and providing related services.

13                              **JURISDICTION AND VENUE**

14  16.     Venue is proper in this District under 28 U.S.C. §1391 because Defendants Daimler and

15  MBUSA are deemed to reside in any judicial district in which it is subject to personal

16  jurisdiction. Additionally, Daimler and MBUSA transact business within this District, and some

17  of the events establishing the claims at issue here arose in this District.

18  17.     This Court has jurisdiction over MBUSA because it, at all times relevant herein, was

19  qualified to do business and regularly conducted business in California.

20  18.     This court has jurisdiction over Daimler because Daimler has continuous and systematic

21  general business contacts in this District. By using MBUSA as its channel for marketing,

22  distributing, warranting, selling, and leasing Daimler-designed vehicles in this District and

23  throughout the United States, Daimler has deliberately taken affirmative steps to make Daimler-

24  designed vehicles available to consumers in this District and the rest of California, including

25  Plaintiff, creating continuing obligations between Daimler and residents of this District; and

26  purposefully availed itself of the benefits and protections of conducting business in this District

27  and California generally.

28  19.     Daimler employees and representatives regularly visit Daimler subsidiaries located in this

District, thereby continuously conducting business in this District and California generally. For example, Mercedes's North American research headquarters is in California, and, in total, California is home to three of five of Mercedes's North American research facilities, including a California Business Center in Long Beach, California, a California Vehicle Preparation Center in Long Beach, California, and a Parts Distribution Center in Fontana, California. Further, Daimler's wholly owned subsidiary and agent, MBUSA, has substantial and consistent contacts in this District, as described above, and as Daimler's agent, MBUSA's contacts in this District can be attributed to Daimler. Daimler, either directly or through its predecessors and agents, arranged for sale or delivery of the Subject Vehicles under the brand name Mercedes-Benz, among others, to the United States for sale throughout California. Daimler, either directly or through its predecessors and agents, designed the camshaft adjusters incorporated into the Subject Vehicles and performed tests on the Subject Vehicles. Daimler employees regularly communicated with employees of defendant MBUSA regarding the camshaft adjusters in the Subject Vehicles and regarding the Subject Vehicles. Daimler, either directly or through its predecessors and agents, has regularly submitted information to the California Air Resources Board ("CARB"), including applications for Executive Orders certification of the exhaust and evaporative emissions control systems required to selling the Subject Vehicles in California. Daimler has algo regularly participated in meetings with CARB, including in person, via telephone, or through videoconference technology, including in connection with applications for Executive Order related to the Subject Vehicles. Finally, Plaintiff's claims here arise out of Daimler's contacts with this District, particularly in that plaintiff could not even have purchased the vehicle if not for Daimler's intentional acts of designing the Subject Vehicle (including their camshaft adjusters), obtaining CARB approval for the California sale of the Subject Vehicles, and exporting the Subject Vehicles for sale to customers in this District and the rest of California, including Plaintiff. These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

//

20.     This Court also has jurisdiction over Plaintiff's claims because Plaintiff is a California resident, the Class consists entirely of California residents, and the acts and practices challenged herein have occurred and continue to occur in California.

**THE REPRESENTATIVE TRANSACTION**

21.     On or around July 2, 2016, Plaintiff purchased a Mercedes-Benz Certified Pre-Owned ("CPO") 2014 Mercedes-Benz C250 (the "vehicle") from an authorized Mercedes dealership. Plaintiff's Vehicle was designed, manufactured, distributed, marketed, and warranted by defendants, MBUSA and Daimler.

22.     Prior agreeing to purchase the vehicle, Plaintiff interacted with and received information from sales representatives at the authorized Mercedes-Benz dealership. The Mercedes Defendants communicate to customers indirectly through their authorized dealerships. Under the terms of the Mercedes Defendants' express warranty, Plaintiff would need to take the vehicle to the Mercedes Defendants' authorized dealerships to perform warranty repairs. And it is through their dealership network that the Mercedes Defendants circulate special service messages, technical service bulletins, DTB/Xentry Bulletins, News Channel Updates, and other information regarding the Mercedes Defendants' vehicles. The Mercedes Defendants knew that their consumers depended on their authorized dealerships for information about their vehicles and the authorized dealerships would have disclosed defects with the Subject Vehicles, including defects with the camshaft adjusters, if the Mercedes Defendants had required it.

23.     Either at, or prior to, the time of sale of the vehicle, the selling dealership did not disclose any defects with the camshaft adjusters for the Subject Vehicle when being purchased by Plaintiff and members of the Class. Employees of Mercedes dealerships selling the Subject Vehicles discussed the features of the Subject Vehicles with customers including the warranty information and details regarding the engine and other components. However, the Mercedes dealership's employees failed to disclose, when discussing the other components of the Subject Vehicle, the defect in camshaft adjusters known to exist in the Subject Vehicles.

24.     The Mercedes-Benz Certified Pre-Owned Program is a Mercedes-Benz program designed to encourage trade-in of Mercedes-Benz vehicles to authorized dealers to increase trade-in value

1   and to encourage customers to purchase used Mercedes-Benz vehicles with the assurance that the

2   CPO vehicles have been gone through "an exhaustive certification process" and have extended

3   Mercedes-Benz factory warranty coverage.

4   25.     In order to qualify for the Mercedes-Benz Certified Pre-Owned Program, vehicles must

5   meet "stringent criteria," including, but not limited to, having less than 75,000 miles on the

6   odometer, being less than 6 years old, and having been serviced according to maintenance

7   schedule, and must pass a "rigorous inspection" including "a thorough condition check

8   verification of your engine from filters and plugs to engine mounts and V-belts."

9   26.     In addition to being covered by any remaining portion of the Mercedes-Benz four-

10   year/50,000 mile New Vehicle Limited Warranty, all Mercedes-Benz CPO vehicles come with a

11   CPO Limited Warranty that "provides comprehensive coverage for another 12 months," with

12   unlimited mileage, beyond the New Vehicle Limited Warranty period.

13   27.     At the time of purchase, Plaintiff's vehicle was two years old and had 22,827 miles on the

14   odometer, which meant that at the time of purchase by Plaintiff, the vehicle came with both the

15   remainder of the 4-year/50,000-mile New Vehicle Limited Warranty and an additional

16   comprehensive one-year CPO Limited Warranty from the Mercedes Defendants.

17   28.     At the time the vehicle was delivered to Plaintiff, it was equipped with camshaft adjusters

18   that were defectively designed. The defect caused the camshaft adjusters to fail, resulting in

19   check engine lights being displayed and long crank at start up after being driven for less than

20   50,000 miles.

21   29.     Although the Dealership employees discussed other components of the vehicle including

22   its longevity, warranty and other mechanical attributes, the employees should have but did not

23   discuss any defects in the camshaft adjusters in the Subject Vehicle. This information should

24   have been disclosed at the time the Dealership employees discussed the other components of the

25   Subject Vehicle.

26   30.     In August 2019, when Plaintiff's vehicle had less than 50,000 miles on the odometer,

27   Plaintiff first discovered that the vehicle's "Check Engine Light" was illuminated and that the

28   vehicle experienced a "long crank during start up." These defects occurred despite Plaintiff

1  operating the vehicle in a manner consistent with its intended use, having had no accidents with

2  the vehicle, and Plaintiff regularly maintaining the vehicle.

3  31.  Plaintiff took the vehicle in for service to Mercedes-Benz of San Francisco, a factory-

4  authorized Mercedes-Benz dealership. The dealership ran the vehicle for fault codes and found

5  that "VIA SOS SHOWS STORED FAULT CODE IN ME FOR P034062 the position sensor for

6  the intake camshaft (cylinder bank 1) has an electrical fault."

7  32.  Plaintiff was told by Mercedes-Benz of San Francisco that she would need to pay $1,000

8  just to have the vehicle "opened up" and that repairs would costs thousands of dollars more.

9  When Plaintiff complained that a vehicle of such low mileage and age should not require such a

10  costly repair, she was told by the dealership that the vehicle was outside of Mercedes-Benz's

11  express warranties (totaling 5 years). Plaintiff was advised to contact MBUSA directly.

12  33.  As a result, Plaintiff subsequently complained directly to MBUSA, but was not offered

13  any relief. Rather, Plaintiff was told that she *might* get a discount if she had the vehicle repaired

14  at an authorized Mercedes-Benz dealership as opposed to an independent repair shop.

15  34.  Plaintiff had no choice but to take the vehicle to a certified Mercedes-Benz independent

16  repair facility and pay $3,700 to have the vehicle's intake and exhaust camshaft adjusters, timing

17  chain tensioner and related seals and gasket replaced, because continuing to drive the vehicle

18  would pose a safety hazard, as the defective camshaft adjusters would eventually cause the

19  vehicle to fail, without any warning.

20  **THE CAMSHAFT ADJUSTERS ON THE SUBJECT VEHICLES**

21  35.  The Subject Vehicles are equipped with M271.8 EVO engines that were first introduced

22  by the Mercedes Defendants into the United States with the 2012 model year. It is part of the

23  M271 family of engines, first introduced in 2002. The M271 "EVO" engine was announced in

24  2009 as "representative of the ongoing efforts of Mercedes-Benz to successfully implement its

25  long-term downsizing concept for series production passenger cars. The focus of the new engine

26  was to integrate a number of measures, all of which were designed to improved fuel economy. At

27

28

1   the same time, engine and torque performance are increased."[2]

2   36.    The M271.8 EVO engine contains defective intake and exhaust camshaft adjusters which

3   are prone to premature malfunction and failure, creating a safety risk and forcing Plaintiff and

4   members of the Class to pay thousands of dollars to replace the camshaft adjusters and attendant

5   engine parts.

6   37.    For illustrative purposes, below is a photo of camshaft adjusters:



38.    The camshaft adjusters are part of the Subject Vehicles' engine's variable valve timing

system. The intake camshaft on a vehicle controls the valves that allow the combination of air

and fuel into the vehicle's engine. The exhaust camshaft controls the valves that allow for the

release of exhaust gases from the engine.

39.    How far intake and exhaust valves open, how long they stay open, and when they open

and close, impacts engine performance and fuel efficiency.

40.    With a "fixed camshaft," the end of each camshaft is forged to a gear connected to the

timing chain that is also connected to the engine's crankshaft. The valves' timing (*i.e.* when

intake and exhaust valves open and close) is dictated by the gears' relative position to the

[2] Lückert, P., Kreitmann, F., Rehberger, A. *et al.* The new 1,8 l four-cylinder gasoline engine from Mercedes-Benz. *MTZ Worldw* **70,** 14–20 (2009). https://doi.org/10.1007/BF03226957

1    crankshaft via the timing chain.

2    41.    Instead of a fixed gear at the end of the camshaft, a camshaft adjuster (or phaser)

3    connects to a camshaft (and the timing chain) and allows for continuous adjustment of the

4    camshaft's position relative to the crankshaft. If the camshaft is "advanced," or turned slightly

5    relative to the crankshaft, the valves will open and close sooner, improving fuel efficiency but

6    impacting performance. Conversely, "retarding" the camshaft, turning it so valves open and

7    close late, improves horsepower but impacts fuel efficiency. A camshaft adjuster allows the

8    vehicle's computer to continuously adjust the camshafts based on operating conditions (*e.g.*

9    different RPMs) to improve both performance and fuel efficiency.

10   42.    If either of the Subject Vehicles' camshaft adjusters begin to malfunction, the vehicle can

11   choke, hesitate, have a long crank, take longer to start, and can take multiple attempts before it

12   will turn over. This is because the vehicle's computer software reads a fault when sensing the

13   intake and/or exhaust variable camshaft and the vehicle will not start. When the vehicle

14   eventually starts, the engine will rattle, may make a grinding noise or knocking sound, and the

15   check engine light may remain on. The vehicle may go into "limp" mode and not drive properly.

16   Alternatively, the vehicle may stall or stutter and drivers will have trouble accelerating after

17   coming to a stop. And if an adjuster completely fails, it can come loose from the timing chain

18   and the vehicle will not operate at all.

19   43.    Because there are two camshaft adjusters, when one is replaced, the other typically is

20   advised to be replaced as well, so the timing chain is not interrupted by two dissimilarly aged

21   camshaft adjusters. The timing chain and/or timing chain tensioner may also need to be replaced.

22   Replacement of both camshaft adjuster and the timing chain can cost up to $10,000.

23   44.    Based on the Mercedes Defendants' representations in the Maintenance Booklets

24   provided with the Subject Vehicles and its failure to set forth a replacement schedule, the

25   camshaft adjusters are intended and reasonably expected to last for the useful life of the engine,

26   at least 170,000 miles, without the need for repair or replacement.

27   45.    According to the Subject Vehicles' maintenance schedules, the camshaft adjusters in the

28   Subject Vehicles are expected to last for the useful life of the Subject Vehicles' engine and

1   should not require maintenance or replacement. The maintenance schedules for each Subject

2   Vehicle model year does not require maintenance of the camshaft adjusters within 170,000 miles

3   (the highest number of miles shown in the maintenance schedule). The failure of the camshaft

4   adjusters in the Subject Vehicles occurs prematurely and before any reasonable consumer would

5   expect the failure to occur.

6   46.   No reasonable consumer expects to spend thousands of dollars to repair or replace

7   essential engine components during the useful life of the engine, *i.e.* within the first 170,000

8   miles of use. Further, Plaintiff and members of the class do not reasonably expect their camshaft

9   adjusters to fail before the end of the useful life of the engine or to pay to replace their camshaft

10   adjusters or timing chain/timing chain tensioner in the event of a camshaft adjuster malfunction

11   and/or failure.

12   47.   As a direct result of the Mercedes Defendants' wrongful conduct, Plaintiff and members

13   of the Class have been or will be forced to pay thousands of dollars to replace their camshaft

14   adjusters and other parts affected by the camshaft adjusters' failure.

15   48.   Plaintiff and members of the Class also suffered diminished market value and other

16   damages related to their purchase of the Subject Vehicles as a direct result of the Mercedes

17   Defendants' material misrepresentations and omissions regarding the standard, quality or grade

18   of the Subject Vehicles and/or the existence of the camshaft adjuster defect. The fact that the

19   camshaft adjusters are prone to premature failure is material to Plaintiff and members of the

20   Class both because it subjects Plaintiff and members of the Class to unexpected costs of

21   replacement ranging in the thousands of dollars, and because the sudden failure of the camshaft

22   adjusters presents a risk of injury and/or death to drivers and passengers of the Subject Vehicles.

23   The intake and exhaust camshaft adjusters are integral components of the M271.8 EVO engine in

24   the Subject Vehicles and their failure can lead to the inability to accelerate or maintain speed.

25   These types of failures subject drivers and passengers of the Subject Vehicles to safety risks,

26   including the potential for rear-end collisions and other accidents. As a result of the Mercedes

27   Defendants' material misrepresentations and omissions, including the failure to disclose that the

28   Subject Vehicles are prone to premature camshaft adjuster failure, the Mercedes Defendants

1  have recklessly placed Plaintiff and members of the Class and the occupants of the Subject

2  Vehicles at risk.

3  **MERCEDES-BENZ'S KNOWLEDGE OF THE CAMSHAFT ADJUSTER DEFECT**

4  49.     The problems that Plaintiff experienced with her vehicle and camshaft adjusters are not a

5  localized phenomenon. Mercedes-Benz owners and lessees across the United States and in other

6  countries have reported premature failure of the camshaft adjusters in their Subject Vehicles and

7  other model Mercedes-Benz vehicles with M271 and other engines that have likewise

8  necessitated costly repairs and replacements.

9  50.     The camshaft, including any adjuster, is a part of a vehicle that should not fail during the

10  normal lifespan of a vehicle's engine.[3] The Subject Vehicles were first released in 2011 as part

11  of the 2012 model year. By 2012, the Mercedes Defendants began to receive requests from its

12  authorized dealerships to approve the replacements of camshaft adjusters on the Subject

13  Vehicles. In fact, by the time that Plaintiff purchased her vehicle, the Mercedes Defendants had

14  authorized warranty/goodwill repairs to replace/replace the camshaft adjusters on 1,528 Class

15  Vehicles, in California alone. Because camshaft adjusters should not fail during the reasonable

16  life of the vehicle, and certainly should not fail within the first year of use, these early warranty

17  repairs put the Mercedes Defendants on notice of the defect with the camshaft adjusters on the

18  subject vehicles.[4]

19  51.     Many of these individuals have called the Mercedes Defendants' consumer complaint

20  lines or advised their dealership of the problem when attempting warranty repairs. The Mercedes

21  _____

22  [3] *See* https://www.autobild.de/artikel/nockenwelle-schaeden-symptome-kosten-13368941.html
   ("The camshaft is normally a component for life. This means that the approximately 200,000 to

23  300,000 kilometers that many manufacturers specify as the service life of their car can be carried
   out without replacing or repairing the camshaft.")

24  [4] On February 10, 2021, Plaintiff propounded a first set of written discovery on Defendant
   MBUSA, including discovery requests regarding camshaft adjuster warranty requests. While

25  MBUSA has admitted that it approved warranty requests to replace camshaft adjusters in 2012,
   2013, 2014, and 2015, and prior to Plaintiff's purchase of the vehicle on July 2, 2016. But rather

26  than directly answer interrogatories regarding the total number of camshaft adjusters replaced on
   Subject Vehicles in California, MBUSA has elected, pursuant to FRCP Rule 33(d), to refer to

27  documents that have not yet been produced. Once MBUSA produces these warranty documents,
   Plaintiff will be able to specify the exact number of camshaft adjusters replaced on the Subject

28  Vehicles during each year.

1   Defendants track customer calls as well as feedback from dealerships and other repair facilities.

2   The Mercedes Defendants also maintain a database regarding warranty service requests, and

3   tracks the sale of replacement parts, including intake and exhaust camshaft adjusters and timing

4   chains. Together, the available data demonstrate that an inordinate number of Subject Vehicles

5   have experienced premature failure of their camshaft adjusters, particularly when compared to

6   other vehicles. Given that the camshaft adjuster should last for the life of the engine, any

7   complaints would put the Mercedes Defendants on notice that there is a defect with the camshaft

8   adjusters on the Subject Vehicles.

9   52.     Plaintiff is informed and believes and, on that basis alleges that the Mercedes Defendants

10  track complaints made to the National Highway Transportation Safety Administration

11  ("NHTSA"). NHTSA has on record numerous complaints over the years by vehicle owners

12  complaining of premature failure of the camshaft adjusters on the Subject Vehicles, including

13  complaints that pre-date Plaintiff's purchase.

14  53.     Below is a sampling of consumer complaints made to NHTSA regarding failures of the

15  camshaft adjusters on Subject Vehicles:

16
- **Date Complaint Filed:** January 20, 2015
17   **Date of Incident:** October 20, 2014
     **Components(s):** ENGINE
18   **NHTSA ID Number:** 106760804
     **Consumer Location:** San Antonio, Texas
19   **Vehicle Make Model Year:** Mercedes Benz C250 2012
     **Vehicle Identification No. (VIN):** WDDGF4HB7CA****
20   **Summary of Complaint:** CAMSHAFT INTAKE ADJUSTER REPLACED
     THERMOSTAT SEALS REPLACED CHAIN TENSIONER REPLACED. *TR

21
- **Date Complaint Filed:** July 15, 2015
22   **Date of Incident:** June 17, 2015
     **Components(s):** ENGINE
23   **NHTSA ID Number:** 10732552
     **Consumer Location:** Miami, FL
24   **Vehicle Make Model Year:** Mercedes Benz C250 2012
     **Vehicle Identification No. (VIN):** WDDGF4HB8CR****
25   **Summary of Complaint:** REF: NHTSA ID NUMBER: 10676804 SUMMARY:
     CAMSHAFT INTAKE ADJUSTER REPLACED THERMOSTAT SEALS REPLACED
26   CHAIN TENSIONER REPLACED MY 2012 MB C250, WHILE STILL UNDER
     WARRANTY BY YEAR AND MILEAGE, WAS DECLINED TO BE SERVICE BY
27   MERCEDES BENZ OF CUTLER BAY, FLORIDA. THERE REASONING IS THAT I
     DID NOT USE A MB OIL FILTER; THEY HAVE CANCELLED MY WARRANTY.
28   EVEN THOUGH I HAVE DONE ALL THE PROPER OIL CHANGES SOONER
     THAT THE MB RECOMMENDATIONS.

- **Date Complaint Filed:** September 13, 2016
  **Date of Incident:** September 6, 2016
  **Components(s):** ENGINE
  **NHTSA ID Number:** 10906264
  **Consumer Location:** West Sacramento, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGJ4HBXCF****
  **Summary of Complaint:** WHEN STARTING THE CAR THE VEHICLE MAKE LOUD RATTLING NOISE AND THE ENTIRE CAR SHAKES. I TOOK THE CAR TO THE MECHANIC AND HE SAID IT IS THE CAMSHAFT ADJUSTER/ACTUATORS. WHICH NEED TO BE REPLACED ALONG WITH THE TIMING CHAIN. HE ALSO SAID IT IS NOT SAFE TO DRIVE AS THEY CAN FAIL AND CAR WILL STOP IN THE MIDDLE OF A ROAD. THE CAR WHEN TRYING TO ACCELERATE SOMETIMES DOESN'T WANT TO GO AND YOU CAN ACTUALLY FELL THE CAR JERK SEEMING AS THE CHAIN IS SKIPPING. IT HAS HAPPENED MULTIPLE TIMES. CAR HAS 67,000 MILES AND THIS STARTED HAPPENING AT 57K MILES.

- **Date Complaint Filed:** April 4, 2016
  **Date of Incident:** April 1, 2016
  **Components(s):** ENGINE
  **NHTSA ID Number:** 10853394
  **Consumer Location:** Dublin, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB2CA****
  **Summary of Complaint:** TL* THE CONTACT OWNS A 2012 MERCEDES-BENZ C250. WHILE THE VEHICLE WAS PARKED, THE VEHICLE MADE A LOUD CLANKING NOISE WHEN IT WAS STARTED. THE FAILURE OCCURRED CONSTANTLY. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE EXHAUST CAMSHAFT ADJUSTER FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 57,219.

- **Date Complaint Filed:** July 12, 2017
  **Date of Incident:** April 15, 2017
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11004697
  **Consumer Location:** Napa, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB9CR****
  **Summary of Complaint:** PURCHASED MY 2012 C250 WITH 45K MILES ON IT AT TIME OF PURCHASE. I PUT 4K MILES AND I STARTED HEARING A TICKING NOISE ON START UPS THEN PROGRESSED. IT HAS TURNED OFF ON ME WHILE DRIVING AT ABOUT 35 MPH AND ANOTHER AT 25 MPH KINDA SCARED TO DRIVE IT. YOU THINK WHEN YOU PAY FOR QUALITY YOU SHOULD GET IT, NOT HAVING TO $5500 FOR A CAMSHAFT LIFTER REPLACEMENT IN UNDER THE FIRST 50K MILES THAT' INSANE! PLEASE SEND FEED BACK IN GOING TO TALK TO LAWYERS AND GET THERE VIEW ON THE SITUATION BECAUSE THERE'S MORE THEN JUST A COUPLE WITH THIS PROBLEM AND SOME WITH VARY LOW MILES. THANKS FOR YOUR TIME MUCH APPRECIATED .

//

- **Date Complaint Filed:** March 30, 2018
  **Date of Incident:** March 28, 2018
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11082187
  **Consumer Location:** Fairfield, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB6CA****
  **Summary of Complaint:** MY C250 HAS ONLY 62,000 MILES. LAST MONTH, IGNITION COIL BROKE, SO I SPENT ABOUT $300 TO REPAIR THAT. ONLY 2 DAYS AFTER I FIXED THE PROBLEM, THE ENGINE INTAKE AND EXHAUST CAM SHAFT ADJUSTERS, TIMING CHAIN TENSIONER BROKE. TOTAL REPAIR COST OF ABOUT $4,000. HOW CAN A VEHICLE THAT HAS ONLY 62,000 MILES HAVE ALL THOSE MAJOR MECHANICAL PROBLEMS? I KNOW I PURCHASED A LEMON. I CALLED AND TALKED TO BENZ CUSTOMER SERVICE REP IN NEW YORK AREA. ORIGINALLY HE TOLD ME THAT HE SURE MADE IT SOUND LIKE THEY BENZ WILL PAY FOR A BIG CHUNK OF TOTAL REPAIR BILL. AND PROMISED TO ME THAT HE WILL GET BACK TO ME WITH AN ANSWER WITHIN FEW DAYS. I CALLED HIM MANY TIMES AND MY WIFE CALLED HIM AS WELL. NEVER A REPLY FOR OVER A MONTH. OUT OF FRUSTRATION, I TRIED TO FIND HIS SUPERVISOR. ONLY AFTER I TRY TO TALK TO HIS SUPERVISOR, THE CUSTOMER REP CALLED ME UP AND OFFER 10% OF REPAIR COST. HE BLAME ME FOR NOT TAKING MY BENZ TO FOR ALL MECHANICAL ISSUES DURING POSSESSION OF MY VEHICLE. THAT IS THE REASON WHY BENZ OFFERED TO PAY FOR 10% OF REPAIR COST. SO I TOLD HIM. BENZ SALESMAN NEVER MENTIONED THAT TO ME. IF IN FACT, I HAD TO TAKE MY VEHICLE TO BENZ DEALERSHIP FOR ANY REPAIRS TO GET BETTER SERVICE DISCOUNT, I WOULD HAVE TAKEN IT TO BENZ DEALERSHIP. THEY NEVER MENTION NO SUCH THING, AND NOW MAKING EXCUSE TO BLAME ME FOR THEM SELLING ME A LEMON. I AM SO DISAPPOINTED BY QUALITY AND CUSTOMER SERVICE OF MERCEDES BENZ COMPANY.

- **Date Complaint Filed:** April 12, 2018
  **Date of Incident:** March 30, 2018
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11084770
  **Consumer Location:** Woodland Hills, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB8CR****
  **Summary of Complaint:** TL* THE CONTACT OWNS A 2012 MERCEDES-BENZ C250. UPON STARTING THE VEHICLE, A LOUD NOISE WAS HEARD COMING FROM THE ENGINE COMPARTMENT AND THE SERVICE ENGINE INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE THE CONTACT WAS ADVISED THAT THE CAMSHAFT AND TIMING CHAIN NEEDED ADJUSTMENT. THE DEALER WAS NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 56,000.

- **Date Complaint Filed:** May 2, 2018
  **Date of Incident:** April 22, 2018
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11091409
  **Consumer Location:** San Diego, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012

**Vehicle Identification No. (VIN):** N/A
**Summary of Complaint:** TL* THE CONTACT OWNS A 2012 MERCEDES-BENZ C250. THE CONTACT HEARD AN ABNORMAL NOISE COMING FROM THE ENGINE COMPARTMENT WHEN THE VEHICLE WAS STARTED. THE FAILURE OCCURRED WITHOUT WARNING. THE VEHICLE WAS TOWED TO MERCEDES-BENZ OF SAN DIEGO IN SAN DIEGO, CA WHERE IT WAS DIAGNOSED THAT THE CAM SHAFT ADJUSTER WAS DEFECTIVE AND NEEDED TO BE REPLACED. THE FAILURE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED, BUT ONLY OFFERED THE CONTACT A DISCOUNT TOWARDS THE COST OF THE REPAIR. THE FAILURE MILEAGE WAS APPROXIMATELY 49,000. THE VIN WAS NOT AVAILABLE.

- **Date Complaint Filed:** January 21, 2019
  **Date of Incident:** July 1, 2018
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11171258
  **Consumer Location:** Chula Vista, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB4CA****
  **Summary of Complaint:** TAKATA RECALL. HORRIBLE NOISE COMING FROM ENGINE. SCARED IT IS THE DREADED CAMSHAFT AND TIMING CHAIN COMBO. IT IS RIDICULOUS THIS HAS YET TO BE RECALLED BY MERCEDES. NOT SAFE AS THE CAR CAN LEAVE YOU STRANDED WITHOUT NOTICE.

- **Date Complaint Filed:** April 27, 2019
  **Date of Incident:** April 25, 2019
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11204065
  **Consumer Location:** Sherman Oaks, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2012
  **Vehicle Identification No. (VIN):** WDDGF4HB0CR****
  **Summary of Complaint:** DEALERSHIP DIAGNOSED PROBLEM WITH CAMSHAFT ADJUSTERS. THIS HAPPENED 2 TIMES ALREADY ON THE SAME VEHICLE, AND IT IS VERY COSTLY TO FIX ($4000). FIRST TIME I HAD A RATTLING NOISE FROM ENGINE, AND CHECK ENGINE LIGHT ON. FIRST TIME IT HAPPENED AT 46K MILES. SECOND TIME CAR HESITATES TO START, HAD LONG CRANKING, IT HAPPENED AT 69K MILES. IT IS A SYSTEMATIC, VERY COSTLY AND POTENTIALLY LIFE THREATENING PROBLEM.

- **Date Complaint Filed:** October 5, 2018
  **Date of Incident:** January 2, 2018
  **Components(s):** ELCTRONIC STABILITY CONTROL, ENGINE
  **NHTSA ID Number:** 11133535
  **Consumer Location:** Long Beach, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2013
  **Vehicle Identification No. (VIN):** WDDGJ4HBXDF****
  **Summary of Complaint:** I WAS EXPERIENCING AN ENGINE STALL WHEN STARTING MY VEHICLE AND A RATTLING LIKE NOISE COMING FROM THE ENGINE AS WELL IN EARLY JANUARY 2018. MY ENGINE LIGHT SENSOR CAME ON ABOUT 2 DAYS LATER. I TOOK MY CAR TO MB LONG BEACH AND WAS ADVISED THAT I NEEDED TO HAVE THE CAMSHAFT ADJUSTED WHICH WOULD COST ME APPROXIMATELY $4K+. IT WAS FURTHER EXPLAINED THAT THIS ISSUE WAS DUE TO A CRACK IN THE SHAFT AND THE OIL IS NOT BEING PROPERLY DISPERSED. AFTER FURTHER

INVESTIGATION ON MY OWN BEHALF, THIS IS AN ENGINE MANUFACTURER DEFECT AND THERE ARE SEVERAL CONSUMER COMPLAINTS REGARDING THIS SAME ISSUE. AFTER CALLING MB USA SEVERAL TIMES, I FINALLY RECEIVED A CALL BACK STATING, I COULD RECEIVE A "1-TIME, 10% OFF THE TOTAL COST OF THE REPAIR. IF THIS WAS A CONSUMER RELATED VEHICLE REPAIR NEGLIGENCE THEN THE CONSUMER COVERING THE EXPENSE WOULD BE THE RIGHT THING TO DO, BUT WHEN THIS IS A DEFECT FROM THE MANUFACTURER AND MB IS AWARE OF IT THEN THIS EXPENSE SHOULD BE ONE THAT SHOULD COVER.

- **Date Complaint Filed:** June 16, 2019
  **Date of Incident:** August 15, 2015
  **Components(s):** ENGINE, FUEL/PROPULSION SYSTEM, POWER TRAIN
  **NHTSA ID Number:** 11220450
  **Consumer Location:** Salinas, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2013
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:** CHECK ENGINE LIGHT CODE, P0340, CAMSHAFT POSITION SENSOR. PROBLEM INCLUDES DIFFICULTY STARTING CAR, ENGINE KNOCK UPON START, AND MISFIRES ACCELERATING TO PASS AT HIGHWAY SPEEDS.

- **Date Complaint Filed:** July 24, 2019
  **Date of Incident:** July 22, 2019
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11234324
  **Consumer Location:** Buena Park, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2013
  **Vehicle Identification No. (VIN):** WDDGF4HBXDR****
  **Summary of Complaint:** LOUD RATTLE AT COLD START UP THAT LAST FOR APPROXIMATELY 5 SECONDS. DIAGNOSED BY SEVERAL MECHANICS AS A KNOWN ISSUE WITH CAM SHAFT VVT. CAM SHAFT ADJUSTER

- **Date Complaint Filed:** December 9, 2019
  **Date of Incident:** December 5, 2019
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11288041
  **Consumer Location:** Riverside, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2013
  **Vehicle Identification No. (VIN):** WDDGF4HB5DR****
  **Summary of Complaint:** AT 46,000 MILES MY MERCEDES BENZ C250 BEGAN HESITATING TO START AND THEN AFTER STARTING MADE A SLIGHT GRINDING NOISE FOR 3 TO 4 SECONDS. AFTER THE CAR HAD HESITATED TO START FOR SEVERAL DAYS THE ENGINE LIGHT THEN CAME ON. WHEN TAKEN IN FOR REPAIR I WAS TOLD THE CAM SENSOR AS WELL AS THE CAM GEARS NEEDED TO BE REPLACED. I HAVE DONE ALL SCHEDULED MAINTENANCE ON THIS VEHICLE AND AM A VERY CONSERVATIVE DRIVER, AS THIS CAR HAS VERY LOW MILES FOR BEING A 2013 MODEL. AFTER A BRIEF ONLINE SEARCH I FOUND COUNTLESS COMPLAINTS FROM OTHER CONSUMERS THAT HAD THE EXACT SAME PROBLEM WITH THEIR MERCEDES BENZ C250. IF THE VEHICLE IS OUT OF WARRANTY THE DEALERSHIPS ARE UNWILLING TO PERFORM THIS WORK AT ANY KIND OF DISCOUNT BECAUSE A FORMAL RECALL HAS NEVER BEEN MADE FOR THIS ENGINE MODEL. THIS REPAIR RANGES IN PRICE FROM $4,000 TO $5,000. THIS SEEMS LIKE AN ISSUE THAT URGENTLY NEEDS TO BE LOOKED INTO

AS MANY CONSUMERS ARE BEING LEFT TO PAY THIS EXCESSIVE BILL FOR AN ISSUE THAT I BELIEVE MERCEDES BENZ KNOWS IS A SYSTEMIC PROBLEM WITH THE ENGINE IN THE C250 MODEL.

- **Date Complaint Filed:** August 23, 2019
  **Date of Incident:** August 17, 2019
  **Components(s):** ENGINE
  **NHTSA ID Number:** 11246058
  **Consumer Location:** Lancaster, CA
  **Vehicle Make Model Year:** Mercedes Benz C250 2014
  **Vehicle Identification No. (VIN):** WDDGF4HB9EA****
  **Summary of Complaint:** TL* THE CONTACT OWNS A 2014 MERCEDES-BENZ C250. WHILE DRIVING, THE VEHICLE FAILED TO ACCELERATE ABOVE 40-50 MPH AND STALLED. THE VEHICLE WAS ABLE TO RESTART AND THE CHECK ENGINE INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO MERCEDES-BENZ OF VALENCIA (23355 VALENCIA BLVD, SANTA CLARITA, CA 91355, (661) 753-5555) WHERE IT WAS DIAGNOSED THAT THE CAMSHAFT AND ENGINE SENSOR NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED; HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS CONTACTED AND REFERRED THE CONTACT TO THE LOCAL DEALER. THE FAILURE MILEAGE WAS 75,000.

54. The Mercedes Defendants are also aware of NHTSA complaints regarding the premature failure of camshaft adjusters on earlier C-Class and other model vehicles equipped with M271 engines. The following are just the complaints for the 2006 C230:

- **Date Complaint Filed:** February 11, 2011
  **Date of Incident:** January 10, 20211
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10381616
  **Consumer Location:** Sugar Land, Texas
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:** TL* THE CONTACT OWNS A 2006 MERCEDES BENZ C CLASS 230. THE CONTACT WAS DRIVING 15 MPH WHEN THE RED ENGINE WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER WHO RAN A DIAGNOSTIC TEST AND DISCOVERED THAT THE CAM SHAFT WAS SPINNING FREE AND WOULD NEED REPLACING. THERE WERE NO RECALLS FOR THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE VIN WAS UNAVAILABLE. THE FAILURE MILEAGE WAS 57,000.

- **Date Complaint Filed:** August 2, 2011
  **Date of Incident:** December 21, 2020
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10416667
  **Consumer Location:** Sugar Land, TX
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** JTEZU14R178****
  **Summary of Complaint:** I WAS INVOLVED IN AN AUTO ACCIDENT (REAR-ENDED) ON DEC 21ST 2010. THE COLLISION RESULTED IN MY VEHICLE BEING PUSHED IN TO ANOTHER VEHICLE (TRUCK) IN FONT OF ME. THE RESULTING CRASH PRODUCED DAMAGES TO THE FRONT AND REAR OF

THE CAR TOTALING 15K. I NOTICED THAT MY DASHBOARD WAS LIT UP WITH WARNING SIGNALS AND CHECK ENGINE LIGHT AT THE SEEN OF THE COLLISION. THE REAR LIGHT WAS EXPLAINABLE AS THE LIGHT WAS KNOCKED OUT IN THE CRASH. THE ENGINE LIGHT HOWEVER WAS A BIT OF A MYSTERY. I TOOK THE CAR IN FOR REPAIRS THREE DAYS LATER AFTER CONSULTING WITH THE DRIVER AT FAULTS' INSURANCE COMPANY. THE REPAIR COMPANY NOTED THE LIGHT ALSO. I COULD ARRIVE AT NO OTHER CONCLUSION BUT THAT THE COLLISION WAS RESPONSIBLE FOR MY ENGINE LIGHT SUDDENLY COMING ON. THE INSURANCE COMPANY ARGUES THAT THE COLLISION HAD NOTHING TO DO WITH THAT PARTICULAR LIGHT COMING ON. THE MATTER IS BEING DEALT WITH IN COURT. IN THE MEANTIME, I DID SOME RESEARCH AND RAN ACROSS HUNDREDS OF COMPLAINTS ON LINE, BY MERCEDES BENZ DRIVERS, COMPLAINING OF A CAM SHAFT PROBLEM THAT IS IDENTIFIED BY AN ENGINE LIGHT INITIALLY. IT APPEARS THAT A PART WAS DEFECTIVE YET NO RECALL HAS BEEN ISSUED BY MERCEDES. I'VE REACHED OUT TO MERCEDES BENZ OF AMERICA. AFTER SEVERAL CALLS RESPONDING TO MY INQUIRY, THEY STOPPED INFORMING ME OF ANY FURTHER FINDINGS. THIS AFTER PROMISING TO APPRISE ME OF THE STATUS OF MY COMPLAINT. MY ISSUE IS TWO FOLD. HOW MUCH EVIDENCE IS NECESSARY BEFORE IT IS CLEAR THAT THIS PRODUCT AND THE SERIES OF CARS THAT ARE IMPACTED BY IT, WARRANTS A RECALL? SOMETHING NEEDS TO BE DONE ABOUT THIS WIDE-SPREAD ISSUE? I MUST TELL YOU THAT AS A CONSUMER, IT IS NO MYSTERY WHAT MOST HAVE LOST TRUST IN GOVERNMENTS ABILITY TO SERVE AND PROTECT IT'S CITIZENS IN THESE MATTERS. I FOR ONE AM DISAPPOINTED IN THE EFFECTIVENESS OF THE PROCESS. I INITIALLY CONTACTED THIS OFFICE EIGHT MONTHS AGO AND HAVE HEARD NOTHING. REGARDS,[XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) *KB

- **Date Complaint Filed:** August 11, 2011
  **Date of Incident:** August 11, 2011
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10418558
  **Consumer Location:** Centerville, GA
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** WDBRF52H36A****
  **Summary of Complaint:** RECEIVED A CHECK ENGINE LIGHT NOTICE. TOOK C-230 (2006) TO DEALER AND WAS TOLD THAT THE CODE INDICATED A WORN TIMING GEAR PROBLEM AND WOULD REQUIRE MAJOR ENGINE REPAIR. THE COST ESTIMATE WAS $4000 TO $5000 TO TAKE THE ENGINE APART AND DETERMINE IF THE GEAR WAS WORN AND NEEDED REPLACEMENT. PERFORMED A INTERNET SEARCH AND FOUND THAT THIS IS A COMMON PROBLEM WITH THESE ENGINES. CAR HAS 85,000 MILES AND WAS PURCHASED IN 2008 WITH 40,000. HAVE NOT HAD THE REPAIR PERFORMED YET. *TR

- **Date Complaint Filed:** August 15, 2011
  **Date of Incident:** August 13, 2009
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10419440
  **Consumer Location:** Red Oak, TX
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** WDBRF52H56F****

20

**Summary of Complaint:** TL* THE CONTACT OWNS A 2006 MERCEDES BENZ C230. THE CONTACT STATED THAT THE ENGINE MISFIRED AND THE ENGINE WARNING LIGHT ILLUMINATED ON THE INSTRUMENT PANEL. THE CONTACT TOOK THE VEHICLE TO THE DEALER WHO REPLACED THE INTAKE MANIFOLD AND CAM SENSOR, BUT THE FAILURE RECURRED. THE CONTACT WAS WAITING FOR A REPRESENTATIVE FROM THE MANUFACTURER TO PROCESS A COMPLAINT. THE FAILURE MILEAGE WAS 29,000 AND THE CURRENT MILEAGE WAS 92,000.

- **Date Complaint Filed:** August 23, 2011
  **Date of Incident:** August 20, 2011
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10422033
  **Consumer Location:** Washington, DC
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** WDBRF52H46F****
  **Summary of Complaint:** ENGINE LIGHT ILLUMINATED: TWO DIAGNOSTICS SUGGESTED TWO SEPARATE PROBLEMS, WORN OUT BALANCE SHAFT AND ISSUES WITH THE INTAKE AND EXHAUST CAMSHAFT. CAR IS SLUGGISH ON ACCELERATION AND OCCASIONALLY WILL NOT SHIFT OUT OF FIRST GEAR. CAR MUST BE PULLED OVER AND TURNED OFF, AND THEN THE COMPUTER RESETS. THIS IS A PERIODIC PROBLEM AND IS A PARTICULAR HAZARDOUS PROBLEM ENTERING HIGH SPEED HIGHWAYS, WHICH I MUST DO ON A DAILY BASIS.

- **Date Complaint Filed:** September 28, 2011
  **Date of Incident:** September 17, 2011
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10427695
  **Consumer Location:** La Verne, CA
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** WDBRF52H16A****
  **Summary of Complaint:** ON MARCH 12, 2011, DURING AN "A" SERVICE, I WAS INFORMED BY MY MECHANIC, THE CHECK ENGINE LIGHT WAS ILLUMINATED DUE TO THE LEFT INTAKE CAM SENSOR WAS DEFECTIVE BUT IT WAS NOT A BIG CONCERN. ON SEPTEMBER 17, 2011, DURING A "B" SERVICE, MY MECHANIC STATED THE CHECK ENGINE LIGHT WAS ILLUMINATED AGAIN FOR THE LEFT INTAKE CAM AND THE RIGHT EXHUAST CAM ADJUSTER MAGNETS WERE DEFECTIVE OR THE BALANCE SHAFT WAS WORN. AT THIS POINT THE CAR WAS RUNNING OK BUT HE SAID IF HE RUNS A DIAGNOSTIC TEST ON THE ENGINE AGAIN IN THE NEAR FUTURE AND IT READS A SECOND PROBLEM ON THE RIGHT SIDE CAM SIDE, THERE IS A STRONG POSSIBILITY TEETH ON THE CAM SPOCKET DUE TO THE USAGE OF AN INFERIOR PRODUCT. HE EXPLAINED IT WOULD BE APPROXIMATELY $4,000.00 TO REPAIR, HE WAS REPAIRING A VEHICLE WITH THE SAME PROBLEM AND SHOWED ME THE WEAR ON THE TEETH WHICH CAUSE THE INBALANCE OF THE SHAFT AND THE CAMS COME OFF LINE. IN MY MECHANICS OPINION, MERCEDES BENZ KNOWS ABOUT THEIR DEFECTIVE PART BYT THEY DO NOT WANT TO HAVE A "CAMPAIGN" TO RESOLVE THE ISSUE AND MY TYPE/YEAR ENGINE WAS MADE WITH THIS INFERIOR PART. I TRAVEL 80 MILES TO AND FROM WORK AND CANNOT AFFORD TO SPEND THIS MONEY FOR A REPAIR ON A VEHICLE THAT IS SUPPOSE TO LAST ME FOREVER. *TT

//

- **Date Complaint Filed:** December 9, 2011
  **Date of Incident:** June 10, 2011
  **Components(s):** ENGINE AND ENGINE COOLING
  **NHTSA ID Number:** 10439125
  **Consumer Location:** Oakland Park, FL
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:** THE VEHICLE WAS BEING DRIVEN ON INTERSTATE 95 IN POMPANO BEACH FLORIDA, THE CAR STARTED TO RUN ROUGH AND THE CHECK ENGINE LIGHT BECAME ILLUMINATED. TOOK THE CAR TO THE REPAIR SHOP AND IT CAME UP WITH 2 CODES 1200 AND 1208 INTAKE AND EXHAUST CAMSHAFT SENSOR RIGHT CYLINDER, THE MECHANICS REPLACED THE 2 SENSORS AND A COUPLE WEEKS LATER IT APPEARED AGAIN. THE ORIGINAL MECHANIC RECOMMENDED ANOTHER SHOP THAT SPECIALIZED IN MERCEDES. I TOOK IT THERE A FEW WEEKS LATER AND WE WERE INFORMED IT IS A COMMON PROBLEM WITH THE MERCEDES AND THAT THEY WERE BEING SUED FOR IT,AND MERCEDES HAS PUT OUT OVER 10 TSB ON THE ISSUE AND IT HAS BEEN HAPPENING TO CARS WITH THIS NEW ENGINE. THE PROBLEM IS THE SPROCKET ON THE BALANCE SHAFT WAS NOT HARDENED METAL,LIKE IT WAS SUPPOSE TO BE. *TR

- **Date Complaint Filed:** October 19, 2012
  **Date of Incident:** September 3, 2012
  **Components(s):** ENGINE
  **NHTSA ID Number:** 10481084
  **Consumer Location:** Kennesaw, GA
  **Vehicle Make Model Year:** Mercedes Benz C230 2006
  **Vehicle Identification No. (VIN):** WDBUF56J36A****
  **Summary of Complaint:** MY MERCEDES E350 REPORTED ENGINE ERROR CODES P0016 AND P0017. DETAILED ERROR CODE READING. P0016 CRANKSHAFT POSITION CAMSHAFT POSITION CORRELATION BANK 1 SENSOR A P0017 CRANKSHAFT POSITION CAMSHAFT POSITION CORRELATION BANK 1 SENSOR B I HAVE 70,000 MILES ON THE CAR NOW AND HAVE FOUND OUT THAT THIS IS A VERY COMMON PROBLEM ON THE THIS CAR. IT LOOKS LIKE A MANUFACTURING DEFECT. PLEASE PROVIDE ME GUIDANCE WITH THIS MATTER. *TR

55.     And Mercedes-Benz enthusiast forums are replete with complaints regarding long cranks (ultimately attributable to the camshaft adjuster defect) and other camshaft adjuster issues with the Subject Vehicles and other model vehicles. Plaintiff is informed and believes and, on that basis alleges that the Mercedes Defendants track these forums. Even before the Subject Vehicles were released, customers complained about the same "P0340" fault codes on their C-Class Vehicles equipped with M271 engines.[5] Beginning in 2012, or earlier, Mercedes-Benz customers

---

[5] https://mbworld.org/forums/c-class-w203/246161-p0012-camshaft-position-timing-over-retarded-bank-1-a.html (first post May 28, 2018); https://mbworld.org/forums/c-class-w203/299235-cel-p0340-cam-position-circuit-malfunction.html (first post May 18, 2009); https://mbworld.org/forums/c-class-w203/454765-crap-p0340-po341-help.html (first post July 7,

began to complain about long cranks on their Subject Vehicles, ultimately attributable to defects with the camshaft adjusters.[6] The complaints are not limited to US based forums and the issue with the camshaft adjusters is one that customers have experienced worldwide.[7] Many of these complaints pre-date Plaintiff's purchase of the vehicle.

56.     Based on these types of complaints and others, the Mercedes Defendants have known about the susceptibility of the camshaft adjusters to fail on previous models of Mercedes-Benz vehicles, yet omitted this information from being disclosed to Plaintiff and the Class.

57.     For example, in or around January 2007, the Mercedes Defendants issued "DTB P-B-05.20/20 JAN07" for "Sporadically occurring noise on engine start in area of the chain drive; Models 209.477, 211.077, and 219.377 – M156 engine (E63 AMG) up to serial # 60 001177." The remedy was that "both intake camshafts and intake camshaft adjusters will be replaced."

58.     In or around January 2009, the Mercedes Defendants issued Star Bulletin, No. S-B-05.20/20b, providing instructions for how to replace the intake camshafts and camshaft adjusters on vehicles equipped with M156 engines when customers complain about "sporadically occurring noise when first starting the engine." (**Exhibit A**-Star Bulletin No. S-B-05.20/20b for

2012); https://mbworld.org/forums/c-class-w203/514149-new-parts-still-pulling-p0101-p0141-p0340-codes.html (first post September 19, 2013); https://mbworld.org/forums/cl-class-w215/519640-help-car-won-t-start.html (first post November 7, 2013); https://mbworld.org/forums/c-class-w203/546887-p0340-car-limp-mode.html (first post June 25, 2014); https://mbworld.org/forums/c-class-w203/564793-c230-timing-chain.html (first post November 22, 2014);
[6] https://mbworld.org/forums/c-class-w204/447206-c250-starter-cranking-issue.html (first post dated May 11, 2012); https://mbworld.org/forums/c-class-w204/521399-mbusa-says-i-need-new-engine.html?ispreloading=1 (first post dated November 22, 2013); https://mbworld.org/forums/c-class-w204/541851-2012-c250-delayed-start-crank-video-attached.html (first post dated May 11, 2014); https://mbworld.org/forums/c-class-w204/584288-spluttering-start.html (first post dated May 7, 2015); https://www.benzworld.org/threads/timing-chain-repair.2379561/ (first post dated June 8, 2015); https://mbworld.org/forums/c-class-coupe-c204/604301-help-long-crank-time-code-p0340.html (first post dated October 29, 2015); https://mbworld.org/forums/c-class-w204/607926-2012-c250-coupe-delayed-start-code-p0340-help.html (first post dated December 1, 2015); https://mbworld.org/forums/c-class-w204/610070-timing-chain-camshaft-issue.html (first post dated December 12, 2015);
[7] https://www.portalmercedes.com/t23499-problemas-com-as-engrenagens-do-eixo-comando-motor-rajando-na-partida-m271-evo (Brazil forum complaining about camshaft adjuster issues. First post dated April 25, 2014); https://mybroadband.co.za/forum/threads/mercedes-w203-timing-gear-replacement.798802/ (New Zealand forum complaining about camshaft adjuster issues. First post dated February 9, 2016);

Mercedes-Benz AMG vehicles equipped with engine M156).

59.     And, in or around December 2009, the Mercedes Defendants issued Service Campaign No. 2009100001 for failing camshaft adjuster solenoids leaking oil into the engine wiring harness, for vehicle models that employed an earlier version of the M271 engine used in the Subject Vehicles. (**Exhibit B-**Service Campaign Bulletin No. 2009100001 recalling camshaft adjuster solenoids on models 170/203 for years 2001-2004/2002-2004).

60.     On December 16, 2009, the Mercedes Defendants issued LI-58-40 summarized as: "XENTRY (MERCEDES): ENGINE WARNING LAMP IS CURRENTLY ON OR WAS ON AND A DELAY FAULT OF THE CAMSHAFT ADJUST TO CURRENT OR STORED IN THE ENGINE CONTROL UNIT. MODELS 171, 203, 209, 211, 219, 221, 216, 230, 164, 251, AND 403. NO MODEL YEARS LISTED. *PE" This bulletin applied to 280 models of Mercedes-Benz vehicles, including the 1998-1999 SLK230, 2005-2009 SLK280, and 2005-2009 SLK350, all predecessors to the Subject Vehicles with variable camshaft timing.

61.     On May 31, 2011, the Mercedes Defendants issued LI-05-20-P, summarized as: "MERCEDES-BENZ: THE MALFUNCTION LIGHT IS ON WITH MULTIPLE POSSIBLE TROUBLE CODES STORED. THERE COULD BE A PROBLEM WITH THE CAMSHAFT AND/OR SCORING OF A PISTON. *RM" This bulletin applied to 151 models of Mercedes-Benz vehicles, including the 2008-2010 C Class, 2008-2010 C300, 2008 C350, 2008-2010 SLK, 2008-2009 SLK280, and 2008-2009 SLK350, the immediate predecessors to the Subject Vehicles.

62.     And on March 19, 2014, the Mercedes Defendants issued LI05.10-P-058758, for "Engine noises (rattling) after engine start and/ or fault code entry 'Plausibility of camshaft position'" for vehicle models that employed an earlier version of the M271 engine used in the Subject Vehicles, including the 2002-2007 C230, 2002-2007 C240, 2005-2007 C280, 2008 C300, 2002-2007 C320, and 2006-2008 C350. (**Exhibit C**).

63.     The defects with the camshaft adjusters on earlier Mercedes-Benz vehicles equipped with early versions of the M271 engine were so common that a need for aftermarket replacement

1   camshaft adjusters arose.[8]

2   64.     In releasing the "M271 EVO" engine, Daimler engineers published trade press articles

3   regarding the design and development of the M271 EVO engine.[9] As written by Daimler, special

4   attention was given to the camshaft adjusters on the engine. The 2009 article, written by Daimler

5   team that designed the M271 EVO engine states:

6   • The camshaft adjusters of the intake and exhaust camshafts are vane-type adjusters. In
7   order to further increase efficiency, it became especially important to reduce the weight
    of the masses moved and the outer size of the adjusters. The induced reduction of the
8   torque that can be transmitted will be overcompensated by using the check valve and a
    spring. The additional check valve allows to use the driving torque for adjusting and to
9   support the retarding torque hydraulically. With these optimizations the overall weight
    could be reduced by 34 %;

10  • With the new camshaft adjuster timing speeds varies even faster, with an improved
11  response of more than 100 % This made it possible not only to exhaust the potential for
    lowering fuel consumption since it is possible now to adjust faster but also to facilitate
12  scavenging, since the camshafts have to be adjusted very quickly here as well to ensure
    driveability;

13  • The previous charging concept used a mechanical supercharger to optimize the response
    of the downsized engine, especially as it was used in heavier vehicles. In redesigning the
14  engine, engineers aimed to retain this characteristic as far as possible by means of the
    turbocharger. Activity thus focused largely on increasing turbocharger performance in the
15  customer operation range and in addition to enhance the maximum torque significantly.
    Thus, the turbocharger performance and **the adjustment dynamics of the intake and**
16  **exhaust camshaft adjusters (and so the gas exchange) were under special attention**
    (emphasis added); and
17
18  • Camshafts can be adjusted through a crank angle of at most 70° CA (intake side 30° CA,
    exhaust side 40° CA). During partial-load operation, up to 20 % of exhaust gas can be
19  recirculated and fuel consumption reduced by approximately 8 to 10 %. This, however,
    can only be achieved when input parameters are set for minimal camshaft vibration to
20  safely avoid misfires. To this end, it was key that the hydraulically actuated camshaft
    adjusters and their control logic be synchronised. A high control stability of less than
21  ±1.5° CAcould be achieved. Camshaft adjustment and scavenging are also performed
    under full-load conditions to reduce fuel consumption and emissions when the engine is
22  labouring. Adapting the timing of the respective valve stroke widths at higher operating
    speeds is especially beneficial, since it leads to a reduction in boost pressure and,
23  ultimately, improves fuel economy'

24  65.     Given the increased load to the camshaft adjusters and their reduced weight, their

25  importance in the M271 EVO engine, and the known issues with the camshaft adjusters on the

26  earlier M271 engines and other engines, Plaintiff is informed and believes, and on that basis

27  [8] *See e.g.* http://www.merc271.com/home.html
28  [9] Lückert, P., Kreitmann, F., Rehberger, A. *et al.* The new 1,8 l four-cylinder gasoline engine
    from Mercedes-Benz. *MTZ Worldw* **70,** 14–20 (2009). https://doi.org/10.1007/BF03226957

1   alleges that the Mercedes Defendants engaged in extensive pre-release testing of the camshaft

2   adjusters on the Subject Vehicles and the M271 EVO engine. In fact, the Mercedes Defendants

3   advertise that:

4       We test for your safety. Parts quality at Mercedes-Benz.
5       We make no compromises when it comes to your safety. We subject all parts to
       extensive tests before they are allowed to be called Mercedes-Benz genuine parts.
6       In so doing we place particular emphasis on functionality, lifespan and resilience.
       Safety has a home. Mercedes-Benz Service.[10]
7
8   66.    This extensive pre-release testing would have shown that the camshaft adjusters on the

   Subject Vehicles are prone to premature failure.

9
10  67.    Indeed, Plaintiff is informed and believes, and on that basis alleges, that the Mercedes

   Defendants have subsequently tested the camshaft adjusters on the Subject Vehicles and

11  investigated their tendency to prematurely fail; and/or that the camshaft adjusters on the Subject

12  Vehicles replaced do not exhibit any signs of abusive driving, improper maintenance, or other

13  driver contributions.

14  68.    Finally, the camshaft adjusters on the M271 engines have been the subject of criticism in

15  the global media.[11]

16  69.    In light of the above, including but not limited to, safety risk, the widespread failure, the

17  multiple reports of the problem to the Mercedes Defendants and government regulators, as well

18  as the other sources of information available to the Mercedes Defendants regarding

19  replacements, the Mercedes Defendants have exclusive and superior knowledge than the general

20  public. The Mercedes Defendants should have disclosed the defect and the fact that the camshaft

21  adjusters on the Subject Vehicles had an unreasonably short lifespan and would require far more

22  frequent replacement than reasonable consumers would expect, but it did not.

23  70.    Therefore, the Mercedes Defendants had knowledge of the latent design defect in the

24  camshaft adjusters at the time of Plaintiff's sale and omitted disclosing that information to

25  Plaintiff.

26
27  [10] *See e.g.* https://www.mercedes-benz.com/en/vehicles/service-parts/we-test-for-your-safety-parts-quality-at-mercedes-benz-mercedes-benz-original-video/
28  [11] *See e.g.* https://autopapo.uol.com.br/noticia/mercedes-problema-motor-classe-c-slk/; https://mbdvigatel.ru/motory/mercedes-m271-evo-cgi.html

71.     At all times relevant, Plaintiff remained unaware that the camshaft adjusters on the Subject Vehicles would prematurely fail under normal driving conditions.

72.     Had the Mercedes Defendants disclosed that the camshaft adjusters would be subject to malfunction and/or failure during the useful lifespan of the Subject Vehicles' engine in any of the various brochures that the Mercedes Defendants published on the Subject Vehicles, on its website, in its warranty manuals or maintenance booklets, in the trade press, or to its own authorized dealerships, Plaintiff would have been aware of the design defect and would not have purchased the vehicle, or would have paid less for it. But the Mercedes Defendants did not disclose any of this information; instead it proceeded to knowingly and purposefully fail to disclose the design defect to Plaintiff and members of the Class.

73.     None of the advertisements reviewed or representations received by Plaintiff and members of the Class, including their interactions with Mercedes authorized dealership sales personnel and the time of the sale of the Subject Vehicles, contained any disclosure relating to the design defect or premature failure of the camshaft adjusters in the Subject Vehicles. Rather, the Mercedes Defendants represented that the Subject Vehicles' camshaft adjusters and associated components such as the timing chain tensioner would be maintenance free up to and including 170,000 miles.

74.     Had the Mercedes Defendants disclosed that latent design defects in the camshaft adjusters would require Plaintiff to spend thousands of dollars to repair or replace the camshaft adjusters and/or other engine parts, Plaintiff would not have purchased her vehicle, or would have paid less for her vehicle.

75.     When Plaintiff and members of the Classes purchased their Subject Vehicles, they reasonably relied on the reasonable expectation that the Subject Vehicles' critical engine parts, including the camshaft adjusters, would last for the lifespan of the engine, *i.e.* 170,000 miles, without need for repair or replacement and/or would not pose an unavoidable safety risk. Had the Mercedes Defendants disclosed that the camshaft adjusters were prone to premature failure and/or an unavoidable safety risk, Plaintiff and members of the Class would not have purchased the Subject Vehicles, or would have paid less for their vehicles.

76.     Each Class Member purchased their vehicle from an authorized Mercedes-Benz dealership. The Mercedes Defendants communicate to customers indirectly through their authorized dealerships. Under the terms of the Mercedes Defendants' express warranties, Class Members would need to take the vehicles to the Mercedes Defendants' authorized dealerships to perform warranty repairs. And it is through their dealership network that the Mercedes Defendants circulate special service messages, technical service bulletins, DTB/Xentry Bulletins, News Channel Updates, and other information regarding the Mercedes Defendants' vehicles. The Mercedes Defendants knew that their consumers depended on their authorized dealerships for information about their vehicles and the authorized dealerships would have disclosed defects with the Subject Vehicles, including defects with the camshaft adjusters, in the Mercedes Defendants had required it. But because the Mercedes Defendants did not instruct their authorized dealerships to make disclosures regarding defects with the camshaft adjusters on the Subject Vehicles, the information regarding the camshaft adjuster defect was concealed from Plaintiff and members of the Class.

77.     The Subject Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiff and members of the Class have suffered an ascertainable loss as a result of the Mercedes Defendants' deceptive conduct, breach of contractual, common law and statutory duties, and omissions and/or misrepresentations associated with the camshaft adjuster defect, including but not limited to, out-of-pocket losses and/or the costs of future replacements, and diminished performance and value of their respective vehicles.

78.     Neither the Mercedes Defendants nor any of its agents, dealers, or other representatives informed Plaintiff and members of the Class of the premature failure of the camshaft adjusters and/or the defective nature of the camshaft adjusters prior to the purchase of the Subject Vehicles.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

79.     The causes of action alleged herein accrued upon discovery of the Subject Vehicles' camshaft adjusters' premature failure. Plaintiff and members of the Class did not discover and

1    could not have discovered the factual bases of their claims through the exercise of reasonable

2    diligence because the Mercedes Defendants knowingly and actively concealed the facts alleged

3    herein. By virtue of the Mercedes Defendants' actions, Plaintiff and members of the Class have

4    been kept ignorant of vital information essential to the pursuit of these claims, without any fault

5    or lack of diligence on their part.

6    80.    Despite the fact that the Mercedes Defendants knew or should have known about the

7    design defects in the camshaft adjusters in the Subject Vehicles, they failed to inform Plaintiff

8    and members of the Class of these facts, or direct their authorized dealerships to inform Plaintiff

9    and members of the Class of these facts.

10   81.    The Mercedes Defendants were and are under a continuous duty to disclose to Plaintiff

11   and members of the Class material information regarding the defects with the camshaft adjusters

12   in the Subject Vehicles. The susceptibility to premature failure and ensuing safety hazards and

13   requirements for replacement of either or both the intake and exhaust camshaft adjusters and the

14   timing chain/timing chain tensioner is material information that a reasonable purchaser would

15   consider important when selecting an automobile.

16   82.    Since Plaintiff and members of the Class had no way of knowing or suspecting that the

17   camshaft adjusters in their Subject Vehicles were defective and were highly susceptible to

18   premature failure, the Mercedes Defendants are estopped from relying on any statute of

19   limitations in its defense of this action.

20                              **CLASS ACTION ALLEGATIONS**

21   83.    Plaintiff brings this class action on behalf of herself and all other persons similarly

22   situated. The proposed class (the "Class") is defined as follows:

23          All residents of California, who currently own, or previously owned, a 2012,
24          2013, or 2014 model year Mercedes-Benz C250 Sedan, a 2012, 2013, 2014, or
             2015 model year Mercedes-Benz C250 Coupe, or a 2012, 2013, 2014, or 2015
25          Mercedes-Benz SLK 250, that was purchased either new or as a Mercedes-Benz
             Certified Pre-Owned vehicle.

26   84.    Expressly excluded from the Class are: (a) any Judge or Magistrate Judge presiding over

27   this action and members of their immediate families; (b) the Mercedes Defendants and any entity

28

1   in which the Mercedes Defendants have a controlling interest, or which has a controlling interest

2   in the Mercedes Defendants, and its legal representatives, assigns and successors; and (c) all

3   persons who properly execute and file a timely request for exclusion from the Class.

4   85.     Plaintiff reserves the right to amend the Class definition if further investigation and

5   discovery indicates that the Class definitions should be narrowed, expanded, or otherwise

6   modified.

7                              **Numerosity and Ascertainability**

8   86.     Plaintiff is unable to state the precise number of members of the class because such

9   information is in the exclusive control of the Mercedes Defendants. Due to the nature of the trade

10  and commerce involved, however, Plaintiff believes that the total number of class members is at

11  least in the thousands and members of the Class are so numerous that joinder of all class

12  members is impracticable. It is so numerous that joinder of all members would be impracticable.

13  The exact size of the proposed class, and the identity of the members thereof, will be readily

14  ascertainable from the business records of the Mercedes Defendants. The disposition of the

15  claims of these Class Members in a single action will provide substantial benefits to all parties

16  and to the Court. Class Members are readily identifiable from information and records in the

17  Mercedes Defendants' possession, custody, or control.

18                                      **Commonality**

19  87.     There are common questions of law and fact affecting the rights of each Class member

20  and common relief by way of damages. The harm that the Mercedes Defendants caused or could

21  cause is substantially uniform with respect to Class members. Common questions of law and fact

22  that affect the Class members include, but are not limited to:

23          (a)     Whether the camshaft adjusters on the Subject Vehicles fail prematurely at

24                  unacceptably high rates;

25          (b)     Whether the Mercedes Defendants have made and will continue to make false

26                  and/or misleading statements of fact or has omitted and will continue to omit material

27                  facts to members of the Class and the public concerning the camshaft adjusters on the

28                  Subject Vehicles;

1    (c)    If so, whether the Mercedes Defendants' false and/or misleading statements of
2    fact and concealment of material facts concerning the performance and reliability of the
3    camshaft adjusters on the Subject Vehicles were likely to deceive the public;

4    (d)    Whether the camshaft adjusters on the Subject Vehicles fail to conform to the
5    Mercedes Defendants' product specifications;

6    (e)    Whether the Mercedes Defendants concealed from Plaintiff and members of the
7    Class that camshaft adjusters on the Subject Vehicles do not conform to the Mercedes
8    Defendants' product specifications;

9    (f)    Whether, by the misconduct alleged in this action, the Mercedes Defendants have
10    violated:

11        (i)    the Magnuson-Moss Warranty Act.;

12        (ii)    the Song-Beverly Consumer Warranty Act;

13        (iii)    the Consumer Legal Remedies Act; and

14        (iv)    the Unfair Competition Law, California Business & Professions Code
15            §17200, *et seq*.

16    (g)    Whether by requiring Plaintiff and members of the Class to pay for repairs arising
17    from premature failure with the camshaft adjusters on the Subject Vehicles, the Mercedes
18    Defendants breached an implied warranty of merchantability to Plaintiff and members of
19    the Class; and

20    (h)    Whether, because of the Mercedes Defendants' misconduct as alleged herein,
21    Plaintiff and members of the Class are entitled to damages, restitution, injunctive relief,
22    and other remedies, and, if so, the amount and nature of such relief.

23                **Typicality**

24    88.    Plaintiff's claims are typical of the claims of the other members of the Class. The
25    Mercedes Defendants' conduct have caused Plaintiff and members of the Class to sustain the
26    same or substantially similar injuries and damages. Plaintiff has no interests antagonistic to the
27    interests of the other members of the Class. Plaintiff and all members of the Class have sustained
28    economic injuries, including ascertainable loss and injury in fact, arising out of the Mercedes

1    Defendants' violations of law as alleged herein.

2                            **Adequate Representation**

3    89.    Plaintiff will fairly and adequately represent and protect the interests of the members of

4    the Class. Plaintiff is a member of the Class and does not have any conflict of interest with other

5    Class members. Plaintiff has retained and is represented by competent counsel who are

6    experienced in complex class action litigation, including automobile defect and consumer class

7    actions such as the present action.

8    90.    Plaintiff and her counsel are committed to vigorously prosecuting the action on behalf of

9    the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have

10   interests adverse to those of the Class.

11                          **Predominance and Superiority**

12   91.     The common questions of law and fact set forth herein predominate over any questions

13   affecting only individual Class members. A class action provides a fair and efficient method for

14   the adjudication of this controversy for the following reasons which is superior to the alternative

15   methods involved in individual litigation:

16          (a)     The Class is so numerous as to make joinder impracticable. However, the Class is

17          not so numerous as to create manageability problems. There are no unusual legal or

18          factual issues that would create manageability problems. Prosecution of separate actions

19          by individual members of the Class would create a risk of inconsistent and varying

20          adjudications against Defendant when confronted with incompatible standards of

21          conduct;

22          (b)     Adjudications with respect to individual members of the Class could, as a practical

23          matter, be dispositive of any interest of other members not parties to such adjudications, or

24          substantially impair their ability to protect their interests; and

25          (c)     Despite the costly nature of the repair costs suffered by Plaintiff and Class

26          members, the claims of the individual Class members are, nevertheless, small in relation

27          to the expenses of individual litigation, making a Class action the only procedural method

28          of redress in which Class members can, as a practical matter, recover.

**FIRST CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*)**
**(On Behalf of the Class against the Mercedes Defendants)**

92.     Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 91 above.

93.     The Magnuson-Moss Warranty Act imposes civil liability on any warrantor for, inter alia, failing to comply with any obligation under a written and/or implied warranty. 15 U.S.C. §2310(d)(1). The Act authorizes suits for damages and other legal and equitable relief and the award of attorney's fees, and expressly authorizes class actions. 15 U.S.C. §§2310(d)(1), 2310(e).

94.     The Subject Vehicles are tangible personal property distributed in commerce, normally used for personal, family, or household purposes. As such, the Subject Vehicles are "consumer products" as that term is defined in 15 U.S.C. §2301(1).

95.     Plaintiff and members of the Class have purchased the Subject Vehicles and are "consumers" as that term is defined in 15 U.S.C. §2301(3).

96.     At all relevant times, the Mercedes Defendants have been a company engaged in the business of designing, manufacturing, and selling the Subject Vehicles to Plaintiff and members of the Class as well as the general public. The Subject Vehicles are also subject to implied warranties. As such, the Mercedes Defendants are a "warrantor" within the meaning of 15 U.S.C. §2301(5), and the Subject Vehicles are equipped with "implied warranties" as that term is defined in 15 U.S.C. §2301(7).

97.     The Mercedes Defendants breached these implied warranties by misrepresenting the standard, quality or grade of the Subject Vehicles and failing to disclose and concealing the existence of the camshaft adjuster defect. Without limitation, the Subject Vehicles share a common camshaft adjuster defect in design, material, manufacturing and/or workmanship that is prone to premature failure and fails to operate as represented by the Mercedes Defendants.

98.     Plaintiff and members of the Class have had sufficient direct dealings with the Mercedes Defendants or their agents (dealerships) to establish privity of contract between the Mercedes Defendants, on the one hand, and Plaintiff and members of the Class, on the other hand.

1   Nonetheless, privity is not required here because Plaintiff and each of the other members of the

2   Class are intended third-party beneficiaries of contracts between the Mercedes Defendants and

3   their dealers, and specifically, of their implied warranties. The dealers were not intended to be

4   the ultimate users of the Subject Vehicles and have no rights under the warranty agreements

5   provided with the Subject Vehicles; the warranty agreements were designed for and intended to

6   benefit purchasers and lessees of the Subject Vehicles only.

7   99.    Affording the Mercedes Defendants, a reasonable opportunity to cure their breach of the

8   implied warranties would be unnecessary and futile. At the time of sale of each Subject Vehicle

9   and all relevant times thereafter, the Mercedes Defendants knew of the material

10   misrepresentations and omissions concerning the standard, quality or grade of the Subject

11   Vehicles and the existence of the camshaft adjuster defect, but failed to replace the camshaft

12   adjusters and/or disclose the camshaft adjusters defect. Under the circumstances, the remedies

13   available under any informal settlement procedure would be inadequate and any requirement that

14   Plaintiff resort to an informal dispute resolution procedure and/or afford the Mercedes

15   Defendants a reasonable opportunity to cure their breach of warranty is excused and thereby

16   deemed satisfied.

17   100.    Plaintiff and members of the Class would suffer economic hardship if they returned their

18   Subject Vehicles, but did not receive the return of all payments made by them. Thus, Plaintiff

19   and members of the Class have not re-accepted their Subject Vehicles by retaining them.

20   101.    By requiring Plaintiff and members of the Class to pay for repairs that have resulted from

21   the camshaft adjuster's failure due to a latent defect that occurred through no fault of Plaintiff or

22   Class members, the Mercedes Defendants breached and will continue to breach these implied

23   warranties. The Mercedes Defendants have had more than adequate opportunity to cure the

24   problem, but has not done so.

25   102.    Plaintiff and members of the Class have been damaged and will continue to be damaged

26   by the Mercedes Defendants' failure to comply with its obligations under the applicable implied

27   warranties. As a direct and proximate result of the Mercedes Defendants' breach of implied

28   warranties, Plaintiff and members of the Class have suffered actual economic damages.

1    WHEREFORE, Plaintiff prays for relief as set forth below.

2    **SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act**
3    **California Civil Code §1790, *et seq*.)**
**(On Behalf of the Class against the Mercedes Defendants)**
4

5    103.   Plaintiff re-alleges and incorporates by reference herein the allegations set forth in

6    paragraphs 1 through 91 above.

7    104.   The Subject Vehicles are consumer goods that Plaintiff and members of the Class have

8    purchased primarily for personal, or household purposes. As such, the Subject Vehicles are

9    "consumer goods" as that term is defined in California Civil Code §1791(a).

10   105.   At all relevant times, the Mercedes Defendants have been a company engaged in the

11   business of designing, manufacturing, and selling the Subject Vehicles to Plaintiff and members

12   of the Class as well as the general public. As such, the Mercedes Defendants are a

13   "manufacturer" as that term is defined in California Civil Code §1791(j).

14   106.   Plaintiff is informed and believes and thereupon alleges that the Mercedes Defendants are

15   the warrantor of the Subject Vehicles and thus obligated to comply with California Civil Code

16   §1791, *et seq*. pursuant to California Civil Code §1795.

17   107.   The Subject Vehicles were accompanied by express warranties offered by the Mercedes

18   Defendants and extended to Plaintiff and the members of the Class through a direct new vehicle

19   sale and/or through the Mercedes-Benz Certified Pre-Owned Program. Due to the existence of

20   the express warranties, the Mercedes Defendants cannot disclaim implied warranties.

21   108.   The Mercedes Defendants' partners with its Mercedes-Benz Certified Pre-Owned

22   Dealerships to sell used vehicles directly to the public by offering a Certified Pre-Owned express

23   warranty as part of the sales package, which is a crucial incentive for buyers like Plaintiff. CPO

24   vehicles are sold at a higher price due to the Mercedes Defendants providing an extended express

25   warranty for only those vehicles purchased through the **Mercedes-Benz Certified Pre-Owned**

26   **Program**. By partnering with its dealerships, the Mercedes Defendants stepped into the role of a

27   distributor and/or retail seller of CPO vehicles and is subject to the obligations of a distributor

28   and/or retail seller under section 1795.5 of the Song Beverly Consumer Warranty Act. Due to it

1   extending a CPO Limited Warranty, the Mercedes Defendants cannot disclaim implied

2   warranties.

3   109.    Thus, Plaintiff's vehicle and the Subject Vehicles contained an implied warranty of

4   merchantability running from the Mercedes Defendants to Plaintiff and members of the Class

5   pursuant to California Civil Code §§1792 and/or 1795.5.

6   110.    Plaintiff and members of the Class purchased the Subject Vehicles with the reasonable

7   expectation that the Subject Vehicles were fit to be used for the ordinary and intended purpose of

8   providing Plaintiff and members of the Class reliable and safe transportation up to at least

9   170,000 miles. The Mercedes Defendants knew when it manufactured and sold the Subject

10  Vehicles that the intended and ordinary purpose of the Subject Vehicles was to provide its

11  owners with reliable and safe transportation for at least 170,000 miles. The Subject Vehicles

12  contained inherently defective camshaft adjusters (at the time of sale and all times thereafter) and

13  present an undisclosed safety risk to drivers and occupants that presents itself well before the

14  intended life of the engine. Thus, the Mercedes Defendants breached its implied warranty of

15  merchantability.

16  111.    Under normal circumstances, properly designed and manufactured camshaft adjusters

17  should last for the life of the engine or at least 170,000 miles without the need for repair or

18  replacement. The Mercedes Defendants cannot disclaim this implied warranty as it knowingly

19  sold or leased a defective product.

20  112.    Plaintiff and members of the Class have had sufficient direct dealings with the Mercedes

21  Defendants or its agents (dealerships) to establish privity of contract between the Mercedes

22  Defendants, on the one hand, and Plaintiff and members of the Class, on the other hand.

23  Nonetheless, privity is not required here because Plaintiff and each of the other members of the

24  Class are intended third-party beneficiaries of contracts between the Mercedes Defendants and

25  its dealers, and specifically, of their implied warranties. The Mercedes Defendants were not

26  intended to be the ultimate users of the Subject Vehicles and have no rights under the warranty

27  agreements provided with the Subject Vehicles; the warranty agreements and representations

28  incident thereto were designed for and intended to benefit purchasers of the Subject Vehicles.

113.    At all times that Plaintiff had possession of her vehicle, Plaintiff used it for the intended and ordinary purpose of transportation. However, her vehicle and Subject Vehicles were not fit for the ordinary purposes for which they were sold. They were in fact defective in design, as set forth above, and not fit to provide Plaintiff and members of the Class with dependable, safe transportation.

114.    As a direct and proximate result of the Mercedes Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Class have suffered damages in that they did not receive the benefit of the bargain. Plaintiff believed that she was sold a Mercedes-Benz vehicle that would not require replacement of the camshaft adjusters for at least 170,000 miles. Instead, Plaintiff and members received Subject Vehicles with defective camshaft adjusters that must be replaced approximately every 50,000 miles at a substantial cost. A reasonable consumer would have not paid the high purchase price for the Subject Vehicles or would have not purchased them at all if they knew that the camshaft adjusters were defective and would have to be replaced periodically at tremendous cost. Now that the defect is known, Plaintiff and all class members have vehicles that are worth substantially less from a resale standpoint because the camshaft adjusters will continue to have to be regularly replaced by future owners.

115.    Plaintiff has suffered damage including but not limited to money expended on replacement of the camshaft adjusters and/or related engine parts related to the design defects, other incidental and consequential damages, and attorneys' fees, costs, and expenses, which Plaintiff and members of the Class have incurred and will continue to incur in order to protect their rights in this matter.

116.    Under California Civil Code §1794(d), Plaintiff and members of the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorneys' fees.

        WHEREFORE, Plaintiff prays for relief as set forth below.

//

//

//

**THIRD CAUSE OF ACTION**
**(Violations of the Consumers Legal Remedies Act, California Civil Code §1750 *et seq.*)**
**(On Behalf of the Class against the Mercedes Defendants)**

117.    Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 91 above.

118.    At all relevant times:

      a.    The Subject Vehicles have been and will continue to be tangible chattels that the Mercedes Defendants have designed, manufactured, and marketed for personal, family, or household purpose that are intended to be purchased or leased and, as such, are "goods" as defined by California Civil Code §1761(a);

      b.    Plaintiff and members of the Class are individuals who have purchased Subject Vehicles for personal, family, or household purposes and, as such, are "consumers" as defined in California Civil Code §1761(d);

      c.    The purchase of a Subject Vehicle from the Mercedes Defendants and extension of the express warranty by the Mercedes Defendants constituted agreements between the Mercedes Defendants on the one hand and Plaintiff and members of the Class on the other and, as such, constitutes "transactions" as that term is defined in California Civil Code §1761(e); and

      d.    The Mercedes Defendants have a company and, as such, is a "person" as that term is defined in California Civil Code §1761(c).

119.    In offering the Subject Vehicles for sale to the public, the Mercedes Defendants have represented, and will continue to represent, directly or by implication, that consumers would be able to use the Subject Vehicles for approximately 170,000 miles before the camshaft adjusters would have to be replaced. Notwithstanding that representation, the Subject Vehicles' camshaft adjusters have been and will continue to be inherently and unreasonable subject to premature failure, which in turn has required and will continue to require Plaintiff and members of the Class to incur costs and expenses to replace the camshaft adjusters and any attendant damage to other engine components.

//

120.     Had Plaintiff and members of the Class been informed of the camshaft adjuster latent defect in the Mercedes Defendants' various brochures that the Mercedes Defendants published on the Subject Vehicles, on its website, in the maintenance booklet, in the trade press, or through the Mercedes Defendants' authorized dealerships, they would not have purchased the Subject Vehicles at the price paid or would have purchased or leased a different model or purchased or leased from a different manufacturer of vehicles.

121.     At all relevant times, the Mercedes Defendants knew that Plaintiff and members of the Class did not know or could not have reasonably discovered the problem prior to purchasing the Subject Vehicles. The Mercedes Defendants have a duty to disclose the material facts clearly and conspicuously at the time of sale given (1) the materiality of the information; (2) the safety risk posed by the design defect; (3) the Mercedes Defendants exclusive knowledge of material facts not known to Plaintiff and members of the Class; and (5) the Mercedes Defendants active concealment of material facts from Plaintiff and members of the Class.

122.     By virtue of this ongoing practice and course of conduct, the Mercedes Defendants have violated and will continue to violate section 1770(a)(5) of the CLRA by representing that the camshaft adjusters and Subject Vehicles have characteristics, uses, and benefits, which they do not have.

123.     By virtue of this ongoing practice and course of conduct, the Mercedes Defendants have violated and will continue to violate section 1770(a)(7) of the CLRA by representing that the camshaft adjusters and the Subject Vehicles are of a particular standard or quality when they are not of the standard or quality.

124.     By virtue of this ongoing practice and course of conduct, the Mercedes Defendants have violated and will continue to violate section 1770(a)(14) of the CLRA by representing that the Subject Vehicles would have a useful engine life of approximately 170,000 miles before the camshaft adjusters would fail or need to be replaced.

125.     The Mercedes Defendants violations of the CLRA present a continuing threat to Plaintiff and members of the Class in that the Mercedes Defendants continues to engage in the above-referenced acts and practices, and unless enjoined from doing so by this Court, will continue to

1  do so.

2  126.    On May 26, 2020, Plaintiff provided notice to MBUSA of the violations alleged above

3  and provided MBUSA an opportunity to cure those violations. MBUSA did not avail itself of

4  this opportunity.

5  127.    In compliance with the provisions of California Civil Code §1782, Plaintiff is providing

6  notice to Daimler of its violations and providing it an opportunity to cure its violations. Unless

7  Daimler does so within 30 days, Plaintiff will file amend the complaint to seek damages against

8  under California Civil Code §1750, *et seq.*

9  128.    Accordingly, Plaintiff seeks an order from the Court awarding actual damages as against

10  MBUSA and equitable relief, as well as an award of attorneys' fees and costs pursuant to

11  California Civil Code §1780, subdivisions (a) and (e) as against the Mercedes Defendants.

12  129.    Plaintiff is entitled to an award of attorneys' fees and costs pursuant to California Civil

13  Code §1780(d).

14      WHEREFORE, Plaintiff prays for relief as set forth below.

15  **FOURTH CAUSE OF ACTION**
**(Violations of the Unfair Competition Law – California Business and Professions Code**
16  **§17200, *et seq.*)**
**(On Behalf of the Class against the Mercedes Defendants)**
17

18  130.    Plaintiff re-alleges and incorporates by reference herein the allegations set forth in

19  paragraphs 1 through 91 above.

20  131.    California Business & Professions Code §17200 *et seq.* (the "Unfair Competition Law"

21  or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business act

22  or practice. Unfair competition also includes "unfair, deceptive, untrue or misleading

23  advertising." The UCL authorizes courts to order injunctive and/or declaratory relief and other

24  equitable relief to remedy any violations.

25  132.    The Mercedes Defendants' conduct as alleged above has been and will continue to be

26  unlawful in that the conduct constitutes and will continue to constitute a violation of the CLRA,

27  the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act, as alleged

28  herein.

133.     The Mercedes Defendants' marketing and sale of the Subject Vehicles without disclosing the existence of the latent design defect plaguing the Subject Vehicles' camshaft adjusters, while misrepresenting the supposed quality and reliability attributes of these Subject Vehicles and their parts, also amounts to a deceptive business practice within the meaning of the UCL. The conduct was deceptive because it was intended to and did mislead and deceive Plaintiff and the Class Members.

134.     The facts concealed and omitted are material facts that a reasonable consumer would consider important in deciding whether or not to purchase a Subject Vehicle. Had the Mercedes Defendants disclosed to Plaintiff and Class Members through its marketing channels, in the maintenance booklet, on its website, in the trade press, or through its authorized dealerships, that the vehicle and Subject Vehicles contained a latent design defect that would result in their vehicles being rendered non-drivable and requiring engine repairs at the cost of thousands of dollars approximately every 50,000 miles, they would not have purchased the Subject Vehicles. The Mercedes Defendants knew that it if were to disclose the existence of this latent defect in the camshaft adjusters, consumers at large would feel and react similarly and forego their purchases or leases of the Subject Vehicles. As a result, the Mercedes Defendants intentionally elected to conceal its knowledge of this existing latent defect.

135.     As a direct, proximate and foreseeable result of the Mercedes Defendants' unlawful and/or deceptive business practice, Plaintiff and the Class members have sustained an ascertainable loss and actual damages, in that: they are left with an expense of thousands of dollars to have their vehicles repaired to remedy the defective camshaft adjusters; they have paid thousands of dollars to have their camshaft adjusters replaced; their vehicles have sustained a diminution in value as a result of this undisclosed defect; and they have or will incur incidental damages attributable to the loss of use of the vehicles during the time that the vehicles are being repaired.

136.     Moreover, because of the Mercedes Defendants' unlawful and/or deceptive business practices, Plaintiff and the class members conveyed money and benefits to the Mercedes Defendants in the form of, *inter alia*, the purchase price for their vehicles, and the repair and

1    parts costs for their vehicles to repair the damage caused by the latent defect at issue.

2    137.    As a result of the Mercedes Defendants' practices, Plaintiff and members of the Class

3    have suffered and will continue to suffer injury in fact and lost money or property. As a direct

4    and proximate result of the acts and practices alleged above, pursuant to California Business &

5    Professions Code §17203, Plaintiff and the Class are therefore entitled to:

6         (a)    preliminary and permanent injunctive relief;

7         (b)    restitution of all monies paid as a result of the Mercedes Defendants' deceptive

8              and unlawful practices, including, but not limited to, the cost and repair and replacement

9              of the Subject Vehicles camshaft adjusters and any damage resulting from their defect,

10             other damages, as well as "benefit of the bargain" damages which can be calculated as

11             the difference between the vehicle they received (with defective camshaft adjusters) and

12             the vehicle they should have received (without defective camshaft adjusters);

13        (c)    interest as allowable by law; and

14        (d)    recovery of Plaintiff's attorneys' fees and costs and expenses incurred in the filing

15             and prosecuting of this action, pursuant to, inter alia, California Code of Civil Procedure

16             §1021.5.

17   WHEREFORE, Plaintiff prays for relief as set forth below.

18                              **PRAYER FOR RELIEF**

19   WHEREFORE, Plaintiff and the class members pray for judgment against the Mercedes

20   Defendants as follows:

21        A.    That the Court determine that this action may be litigated as a class action and

22             that Plaintiff and her counsel be appointed class representative and class counsel,

23             respectively;

24        B.    That the Court enter judgment against the Mercedes Defendants and in favor of

25             Plaintiff and the class on all counts;

26        C.    That Mercedes Defendants be required by this Court's Order to remedy the

27             defects alleged herein, and to compensate all members of the class for their

28             damages and injuries, as well as to compensate Plaintiff's counsel for their

1    attorneys' fees and costs of suit, and that the Mercedes Defendants be ordered to

2    bear the cost of notice to the absent class members, as well as the administration

3    of this common fund;

4    D.    That damages and/or restitution or disgorgement be awarded to Plaintiff and each

5    Class member according to proof;

6    E.    That the Court award injunctive and declaratory relief as pled or as the Court may

7    deem proper;

8    F.    That the Court award interest as allowable by law;

9    G.    That the Court award reasonable attorneys' fees as provided by applicable law;

10   H.    That the Court award all costs of suit; and

11   I.    That Plaintiff and the class members be awarded all such other relief as this Court

12   deems just and proper.

13

Dated: August 23, 2021                         CONN LAW, PC

14

15

                                        By:    */s/ Elliot Conn*
16                                             Elliot Conn

17                                             Attorneys for Plaintiff Ying Ying Guan and the
                                               Proposed Class
18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated: August 23, 2021                          CONN LAW, PC

                                        By:     _/s/ Elliot Conn_____
                                                Elliot Conn

                                                Attorneys for Plaintiff Ying Ying Guan and the
                                                Proposed Class

# Exhibit A



## Mercedes-Benz

*star bulletin*



### *DTB*

| | |
|---|---|
| Date: | January 23, 2009 |
| Order No.: | S-B-05.20/20b |
| Supersedes: | P-B-05.20/20a and T-B-05.20/21a dated December 21, 2007 |
| Group: | 05 |

**Revision History**

| Revision | Date | Purpose |
|---|---|---|
| b | 1/23/09 | Applicable Models Updated and Technical Content Updated |
| a | 12/21/07 | Applicable Models and Warranty Information Updated |
| - | 01/04/07 | Initial issue |

SUBJECT:     **Model 164.177**

**Model 204.077**

**Model 209.377/477**

**Model 211.077/277**

**Model 216.377**

**Model 219.377**

**Model 221.177**

**Model 230.470**

**Model 251.177**

**AMG Vehicles Equipped with Engine M156**

**Sporadically Occurring Noise on Engine Start in Area of the Chain Drive**


If you receive customer reports in the above model vehicles of a sporadically occurring noise when first starting the engine, this may be due to the intake camshaft adjusters or valve tappets.  Use the following sound recordings to assist in fault tracing.

**Camshaft Adjuster Sound Recording**
- Rattling sound with one malfunctioning camshaft adjuster.
- Rattling sound with two malfunctioning camshaft adjusters.

**Valve Tappets Sound Recording**
- Clattering noise/valve tappets.

This bulletin has been created and maintained in accordance with MBUSA-SLP S423QH001, Document and Data Control, and MBUSA-SLP S424HH001, Control of Quality Records.

© 2009 Mercedes-Benz USA, LLC.
Mercedes-Benz Canada, Inc.
Dealer Workshop Services
www.MBUSA.com
www.startekinfo.com

All rights reserved. Reproduction or translation in whole or in part is not permitted without authorization from the publisher.  Printed in U.S.A.

1-800-FOR-MERCedes

**Models 209, 211 and 219, Equipped with M156 Engine up to Serial Number 60 001177**:  For vehicles with camshaft adjuster rattling sound, replace the intake camshafts and intake camshaft adjusters, use repair kit A156 060 3147.  Refer to WIS document number AR05.20-P-6992AMG.  The exhaust camshaft adjuster should not require replacement on this range of engines unless confirmed to be noisy.

[i] **Note:** It is essential to replace both the intake camshafts and intake camshaft adjusters.  Holding device part number W156 589 00 61 00 and locating plate part number W156 589 00 32 00 are absolutely necessary to perform this repair.

**Vehicles Equipped with M156 after Serial Number 60 001178**:
Remedy 1:  For vehicles with camshaft adjuster rattling sound, replace the camshaft adjuster(s) found noisy.  For testing and repair information refer to WIS Group 05.20.

[i] **Note:**  Even if only one camshaft adjuster is replaced it is absolutely imperative to set cam timing on both cylinder banks.  Repair kit A156 050 31 47 should not be used for engines after the serial number break.  Order individual parts as needed.

Remedy 2:  For vehicles with valve tappet(s) sound, replace valve tappet(s) found noisy.  For testing and repair information refer to WIS Group 05.20

Special Tools

 

**156 589 00 61 00**          **156 589 00 32 00**

[i] **Note:**  These two required Special Tools have been automatically released and shipped to all dealers in September 2006.

**Parts Information**

| Qty. | Part Name | Part Number |
|---|---|---|
| 1 | Camshaft adjuster repair kit  (up to eng. no. 60 001177) | A156 050 31 47 |
| As needed | Adjuster, camshaft,  intake | A156 050 30 47 |
| As needed | Adjuster, camshaft,  exhaust | A156 050 28 47 |
| As needed | Valve tappet | A156 050 02 25 |

[i] **Note:**  The following allowable labor operations should be used when submitting a warranty claim for this repair.  This information has been generated on January 23, 2009.  Please refer to Netstar → Star TekInfo → Star Time for the most current labor time allowance.

**In Case of Warranty**

| Operation: | Short test perform (54-1011) |
|---|---|
| | Camshaft B – (valve cover(s) removed), replace (05-6492) |
| | Camshaft C – (valve covers removed), R&R (05-6632) |
| | Camshaft adjuster for camshaft A, remove/install, replace if necessary (cover removed from front of cylinder head) (05-7264) |
| | Camshaft timing adjuster on right cyl. head (B), R&R/repl (valve cover removed) (05-7251) |
| | Camshaft timing adjuster – on left cyl. head (C), R&R/repl. (valve cover removed) (05-7261) |
| | Camshaft adjuster for camshaft D, remove/install, replace if necessary (cover removed From front of cylinder head) (05-7267) |
| | Camshaft(s) timing adjuster – all, R&R/repl. (valve covers removed) (05-7211) |
| | Valve cover – left bank, R&R/reseal (01-5012) |
| | Valve cover – right bank, R&R/reseal (01-5013) |
| | Valve cover – left and right bank, R&R/reseal (01-5011) |
| | Valve lifters (all) on CAM "A" - (after test), replace (05-2322) |
| | Valve lifters (all) on CAM "B" - (after test), replace (05-2327) |
| | Valve lifters (all) on CAM "C" - (after test), replace (05-2332) |
| | Valve lifters (all) on CAM "D" - (after test), replace (05-2337) |
| | Valve lifters, all – (valve cover removed), replace (05-2313) |
| | Valve lifters, all – (valve cover removed), replace (05-2312) |

| Damage Code | Operation Number | Time (hrs.) | Model Indicator (s) |
|---|---|---|---|
| **Repair 1 (up to** Engine # 60 001177) 05050 36 | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |
| | 01 5011 | 2.1 hrs. | AE, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 2.2 hrs | BC |
| | | 2.3 hrs. | R8 |
| | 05 6492 | 1.5 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 2.0 hrs. | AE, DC, Y4 |
| | | 2.4 hrs. | CD |
| | | 2.8 hrs. | R8 |
| | 05 6632 | 1.5 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 2.0 hrs. | AE, DC, Y4 |
| | | 2.4 hrs. | CD |
| | | 2.7 hrs. | R8 |
| **Repair 1 (after** Engine # 60 001177) 05052 36 (Camshaft A) | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |
| | 01 5013 | 1.3 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.4 hrs. | R8 |
| | 05 7264 | 1.1 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.5 hrs. | AE, DC, Y4 |
| | | 1.9 hrs. | CD |
| | | 2.2 hrs. | R8 |
| 05050 36 (Camshaft B) | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |

Continued on Page 4

Continued from Page 3
**In Case of Warranty**

| Damage Code | Operation Number | Time (hrs.) | Model Indicator (s) |
|---|---|---|---|
| | 01 5013 | 1.3 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.4 hrs. | R8 |
| | 05 7251 | 1.3 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.6 hrs. | AE, DC, Y4 |
| | | 2.0 hrs. | CD |
| | | 2.4 hrs. | R8 |
| 05050 36 (Camshaft C) | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |
| | 01 5012 | 1.4 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.5 hrs. | R8 |
| | 05 7261 | 1.3 hrs. | BC, SC, S9, TB, U8, Z3 |
| | | 1.6 hrs. | AE, DC |
| | | 2.0 hrs. | CD |
| | | 2.4 hrs. | R8 |
| 05052 36 (Camshaft D) | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |
| | 01 5012 | 1.4 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.5 hrs. | R8 |
| | 05 7267 | 1.1 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.5 hrs. | AE, DC, Y4 |
| | | 1.8 hrs. | CD |
| | | 2.1 hrs. | R8 |
| 05050 36 (All Adjusters) | 54 1011 * | 0.3 hrs. | AE, BC, CD, DC, R8, S9, SC, TB, U8, Y4, Z3 |
| | 01 5011 | 2.1 hrs. | AE, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 2.2 hrs. | BC |
| | | 2.3 hrs. | R8 |
| | 05 7211 | 1.7 hrs. | AE, BC, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 2.1 hrs. | CD |
| | | 2.4 hrs. | R8 |
| **Repair 2**<br>05319 36 (Camshaft A Lifters) | 01 5013 | 1.3 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.4 hrs. | R8 |
| | 05 2322 | 1.3 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.7 hrs. | AE, CD, DC, Y4 |
| | | 2.0 hrs. | R8 |
| 05319 36 (Camshaft B Lifters) | 01 5013 | 1.3 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.4 hrs. | R8 |

Continued on Page 5

S-B-05.20/20b (January 23, 2009)

Continued from Page 4
**In Case of Warranty**

| Damage Code | Operation Number | Time (hrs.) | Model Indicator (s) |
|---|---|---|---|
| | 05 2327 | 1.3 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.7 hrs. | AE, CD, DC, Y4 |
| | | 2.0 hrs. | R8 |
| 05319 36 (Camshaft C Lifters) | 01 5012 | 1.4 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.5 hrs. | R8 |
| | 05 2332 | 1.3 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.7 hrs. | AE, CD, DC, Y4 |
| | | 2.0 hrs. | R8 |
| 05319 36 (Camshaft D Lifters) | 01 5012 | 1.4 hrs. | AE, BC, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 1.5 hrs. | R8 |
| | 05 2337 | 1.3 hrs. | BC, S9, SC, TB, U8, Z3 |
| | | 1.7 hrs. | AE, CD, DC, Y4 |
| | | 2.0 hrs. | R8 |
| 05319 36 (All Lifters) | 01 5011 | 2.1 hrs. | AE, CD, DC, S9, SC, TB, U8, Y4, Z3 |
| | | 2.2 hrs. | BC |
| | | 2.3 hrs. | R8 |
| | 05 2313 | 3.7 hrs. | BC, Z3 |
| | 05 2312 | 3.4 hrs. | CD |
| | | 3.6 hrs. | AE, DC, Y4 |
| | | 3.7 hrs. | S9, SC, TB, U8 |
| | | 3.9 hrs. | R8 |

*Please note that 54-1011 is claimable only once per Repair Order.  When claiming any of the above repairs please be aware of potential overlapping labor **(i.e. Camshaft adjusters A and D were noisey. 54-1011 is only claimable once and please use 01-5011 to R&R both Valve Covers instead of  01-5012 for the Left and 01-5013 for the Right.).**  The warranty info provided is based on individual repair scenarios and not for vehicles that require more than one of the above repair scenarios.

# Exhibit B

**Service Campaign Bulletin**

| FILE: | SERVICE: | GROUP 00 OF SERVICE INFORMATION BINDER |
|---|---|---|
| | PARTS: | GROUP I OF INFORMATION _ PARTS & ACCESSORIES BINDER |

Campaign No. 2009100001, December 2009

TO:            ALL MERCEDES-BENZ CENTERS

SUBJECT:    **Models 170/203, Model Years 2001 - 2004 / 2002 - 2004**
            **Replace the Camshaft Adjustment Solenoid(s) and Install Adapter Harness (es)**

This Service Campaign has been initiated because Daimler AG (DAG), the manufacturer of Mercedes-Benz vehicles, has determined that due to the settling properties of the seal of the camshaft adjustment solenoid specification, oil may enter the engine wiring harness (es) through the electrical connection of the camshaft adjustment solenoid from capillary action. Dealers will replace the camshaft adjustment solenoid(s) and install an additional adapter connector harness (es) at the next workshop visit.

Prior to performing this Service Campaign:

- Please check VMI to determine if the vehicle is involved in the Campaign and if it has been previously repaired.
- Please review the entire Service Campaign bulletin and follow the repair procedure exactly as described.

Please note that Recall and Service Campaigns **do not expire** and may also be performed on a vehicle with a vehicle status indicator.

Approximately 66,113 vehicles are affected.

Order No. P-SC-2009100001
This bulletin has been created and maintained in accordance with MBUSA-SLP S423QH001, Document and Data Control, and MBUSA-SLP S424HH001, Control of Quality Records.

**Procedure**

**A. Replace Camshaft Solenoid (Model 203.747)**

1. Remove lower engine panel.

2. Separate engine thermostat housing (A, Figure 1) from engine to allow clearance for removal of camshaft solenoid; refer to WIS: AR20.10-P-2710A.
   **Note**: (regarding above WIS instructions):
   - Perform steps 3, 6, 7, 8, 9 only.
   - Do not drain coolant at radiator, allow coolant to drain from thermostat housing and engine when separated (drain coolant into drain pan – do not reuse).



**Figure 1**

3. Disconnect camshaft solenoid connector (B, Figure 1) from camshaft solenoid (C).

4. Remove 3 bolts (arrows, Figure 1) securing camshaft solenoid (C) to engine then remove camshaft solenoid (C).

5. Install new stop plug (D) into new camshaft solenoid (C).

6. Apply sealing material to new camshaft solenoid (C, Figure 1) then install in reverse order (tighten bolts to 8  Nm).

7. Reinstall thermostat housing (A, Figure 1) in reverse order, refer to WIS: AR20.10-P-2710A
   **Note:**
   - Install **new** "O"-ring
   - Top off coolant as needed
   - Tighten bolts to:  10 Nm.

8. Install adapter harness:
- Connect adapter harness between connector on camshaft solenoid (C, Figure 2) and engine harness.
- Secure adapter harness connector (A, Figure 2) to engine harness sheath (B) with cable tie (arrow).
   **Note:**
   Ensure cable tie (arrow) is secured to engine harness sheath (B) as shown otherwise wire chafing may occur.

9. Reinstall remaining components in reverse order.



**Figure 2**

**B.  Replace Camshaft Solenoid (Model 170.449 With Vacuum Pump)**

1.  Disconnect vacuum hose connector (A, Figure 3) from vacuum pump fitting.
2.  Bend vacuum line (B, Figure 3) away from camshaft solenoid (D) enough to allow clearance for removal of camshaft solenoid (D).
3.  Disconnect engine harness connector (C, Figure 3) from camshaft solenoid (D).
4.  Remove 3 bolts (arrows, Figure 3) securing camshaft solenoid (D) to engine then remove camshaft solenoid (D).
5.  Install new stop plug (E, Figure 3) into new camshaft solenoid (D).
6.  Apply sealing material to new camshaft solenoid (D, Figure 3) then install in reverse order (tighten bolts to:  8 Nm).

7.  Install new adapter harness (A, Figure 4):
•  Connect adapter harness (A) between connector on camshaft solenoid and engine harness (C, Figure 4).
•  Secure adapter harness connector (B, Figure 4) to existing engine harness sheath with cable tie (arrow).
    **Note:**
    Ensure cable tie (arrow) is secured to engine harness sheath as shown otherwise wire chafing may occur.
8.  Reinstall remaining components in reverse order.



**Figure 3**



**Figure 4**

### C. Replace Camshaft Solenoid (Model 170.449)

1. Disconnect engine harness connector (A, Figure 5) from camshaft solenoid (B).
2. Remove 3 bolts (arrows, Figure 5) securing camshaft solenoid (B) to engine then remove camshaft solenoid (B).
3. Install new stop plug (C, Figure 5) into new camshaft solenoid (B).
4. Apply sealing material to new camshaft solenoid (B, Figure 5) then install new camshaft solenoid (B) in reverse order (tighten bolts [arrows, Figure 5] to 8 Nm).
5. Install camshaft solenoid adapter harness:
- Connect camshaft solenoid adapter harness to connector on camshaft solenoid and to engine harness connector (C, Figure 6).
- Secure adapter harness connector (A, Figure 6) to engine harness sheath (B, Figure 6) with cable tie (arrow).
   **Note:**
   Ensure cable tie (arrow, Figure 6) is secured to engine harness sheath (B, Figure 6) as shown otherwise wire chafing may occur.



**Figure 5**



**Figure 6**

**D.  Replace Camshaft Solenoid (Models 203.040/740)**

1.  Replace left and right camshaft solenoids (A, Figure 7):

    Refer to WIS: AR05.20-P-7295PK.

    Install new camshaft solenoid stop plugs (C, Figure 7) into new camshaft solenoids (A, Figure 7).

2.  Install camshaft solenoid adapter harnesses (B, Figure 7):

    Connect adapter harness between connector on camshaft solenoid and engine harness.

    Secure adapter cable (B, Figure 7) to engine with cable ties (arrows).

    **Note:**

    Ensure cable ties (arrows) are secured to engine as shown otherwise cover will not properly fit over camshaft solenoids (A) and wire chafing may occur.



**Figure 7**

**Parts information (Model 203.747 with Engine 111.981)**

| Qty | Part Name | Part No. | Estimated Replacement Rate |
|---|---|---|---|
| 1 | Solenoid | A 111 051 01 77 05 | 100% |
| 1 | Stop plug | A 111 997 01 86 | |
| 1 | Adapter connector (harness) | A 271 150 27 33 05 | |
| 1 | Cable tie | A 002 997 24 90 | |
| 1 | Thermostat housing "O"-ring | A 021 997 07 48 | |
| 1[1] | Sealing material | A 003 989 98 20 10 | |
| 1[2].Gal. | Engine coolant | BQ 1 03 0002 | |

[1]  1 container of sealing material is sufficient for 25 vehicles submit as local purchase **SMT00067** qty of 1, handling is included.
[2]  1 Gallon of engine coolant is sufficient for 4 vehicles submit as local purchase **CLT00409** qty of 1, handling is included.

**Parts information (Model 170.449 with Engine 111.983)**

| Qty | Part Name | Part No. | Estimated Replacement Rate |
|---|---|---|---|
| 1 | Solenoid | A 111 051 01 77 05 | 100% |
| 1 | Stop plug | A 111 997 01 86 | |
| 1 | Adapter connector (harness) | A 271 150 27 33 05 | |
| 1 | Cable tie | A 002 997 24 90 | |
| 1[1] | Sealing material | A 003 989 98 20 10 | |

[1]  1 container of sealing material is sufficient for 25 vehicles submit as local purchase **SMT00067** qty of 1, handling is included.

**Parts information engine  (Model 203.040/740 with Engine 271.948)**

| Qty | Part Name | Part No. | Estimated Replacement Rate |
|---|---|---|---|
| 2 | Solenoid | A 271 051 01 77 05 | 100% |
| 2 | Stop plug | A 271 051 00 32 | |
| 2 | Adapter connector (harnesses) | A 271 150 27 33 05 | |
| 2 | Cable tie | A 002 997 24 90 | |
| 2 | Seal ring | A 010 997 23 48 05 | |

**Note:**
- Please be aware that only the part number(s) referenced in the Campaign Bulletin is/are approved for use to repair the vehicle. Repairs performed using any other part(s) will not have been performed in accordance with the campaign.  Accordingly, warranty claims submitted with reference to an improper part number(s) will be denied.
- The following allowable labor operation should be used when submitting a warranty claim for this repair:

**Warranty Information**

**Repair 1 (Model 203.747 with Engine 111.981)**

**Operation:**   Replace camshaft adjustment solenoid and install adapter harness (02-6628)

| Damage Code | Operation Number | Labor Time (hrs.) | Model Indicator(s) |
|---|---|---|---|
| 05 900 10 7 | 02-6628 [1] | 1.7 hrs. | P5 |

[1] Includes separate thermostat housing from engine.

**Repair 2 (Model 170.449 with Engine 111.983)**

**Operation:**   Replace camshaft adjustment solenoid and install adapter harness (02-6628)

| Damage Code | Operation Number | Labor Time (hrs.) | Model Indicator(s) |
|---|---|---|---|
| 05 900 10 7 | 02-6628 [1] | 0.4 | G2 |

[1] Includes disconnect/connect vacuum line from engine (if required).

**Repair 3 (Model 203.040/740 with Engine 271.948)**

**Operation:**   Replace camshaft adjustment solenoids and install adapter harnesses (02-6628)

| Damage Code | Operation Number | Labor Time (hrs.) | Model Indicator(s) |
|---|---|---|---|
| 05 900 10 7 | 02-6628 | 0.8 | Q1, Q3 |

**Note- Consequential Damage:**
If the vehicle requires additional repairs due to damage from the oil leak, submit all necessary labor operations and parts on the same Repair Order Line as the Campaign. Do not submit an additional repair. These additional operations and parts **cannot** be submitted as a Sublet. Additional repairs require dealer text explaining the extent of additional damage.

# Exhibit C

XENTRY

# Engine noises (rattling) after engine start and/ or fault code entry "Plausibility of camshaft position"

| | |
|---|---|
| Topic number | LI05.10-P-058758 |
| Version | 1 |
| Design group | 05.10 Timing chain drive, toothed belt drive |
| Date | 03-19-2014 |
| Validity | ENGINE 271.8 EVO |
| Reason for change | |
| Reason for block | |

## Complaint:

Noise:

A rattling noise may be heard from the area of the chain drive for approx. 2-5 seconds after engine start.

And/or:

Fault code entries in engine control unit:

SIM271DE20:

P001177 The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The commanded position cannot be reached.

P001762 The position of the exhaust camshaft (cylinder bank 1) is implausible in comparison with the position of the crankshaft. The signal comparison is faulty.

P001192 The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The function or the instruction is faulty.

P001195 The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The mechanical setup is not OK.

P001477 The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The commanded position cannot be reached.

P001492 The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The function or the instruction is faulty.

P001495 The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The mechanical setup is not OK.

P001600 The position of the intake camshaft (cylinder bank 1) is implausible in comparison with the position of the crankshaft.

P001662 The position of the intake camshaft (cylinder bank 1) is implausible in comparison with the position of the crankshaft. The signal comparison is faulty.

P001700 The position of the exhaust camshaft (cylinder bank 1) is implausible in comparison with the position of the crankshaft.

## Cause:

The timing chain may have been stretched. This can be assessed by the following test step.

## Remedy:

1. Remove chain tensioner (AR05.10-P-7800evo).

2. Mount measuring chain tensioner W 271 589 07 63 00 without seal and tighten to 20 Nm.

3. Turn the engine over 2x and determine the highest display value for the measuring chain tensioner throughout the entire procedure.

4. Evaluate the value read off the scale of the measuring chain tensioner:

XENTRY

Measurement less than 79 mm: Perform work procedure A.
Measurement greater than 79 mm: Perform work procedure B.

Work procedure A:
1. Install new chain tensioner (AR05.10-P-7800evo).
Work procedure B:
1. Replace timing chain (AR05.10-P-7601*).
2. Visual inspection of intake/exhaust camshaft sprockets
3. Install new chain tensioner (AR05.10-P-7800evo).

_____

* Use the corresponding WIS document.

| Symptoms |
| --- |
| Power generation / Engine noise / Chattering |
| Power generation / Engine noise / Clanking |
| Power generation / Engine noise / Rattling |
| Power generation / Engine noise / Clattering |
| Power generation / Engine noise / Pounding |
| Power generation / Engine management / Engine management indicator lamp / Engine diagnosis / lit |

| Control unit/fault code | | |
| --- | --- | --- |
| Control unit | Fault code | Fault text |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001177 | The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The commanded position cannot be reached. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001762 | The position of the exhaust camshaft (cylinder bank 1) is implausible relative to the position of the crankshaft. The signal comparison is faulty. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001192 | The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The function or the instruction is faulty. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001195 | The position of the intake camshaft (cylinder bank 1) deviates from the specified value. The mechanical setup is not OK. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001477 | The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The commanded position cannot be reached. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001492 | The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The function or the instruction is faulty. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001495 | The position of the exhaust camshaft (cylinder bank 1) deviates from the specified value. The mechanical setup is not OK. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001600 | The position of the intake camshaft (cylinder bank 1) is implausible relative to the position of the crankshaft. |
| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001662 | The position of the intake camshaft (cylinder bank 1) is implausible relative to the position of the crankshaft. The signal comparison is faulty. |

**XENTRY**

| ME - Motor electronics 'SIM271DE20' for combustion engine 'M271EVO' (N3/10) | P001700 | The position of the exhaust camshaft (cylinder bank 1) is implausible relative to the position of the crankshaft. |
|---|---|---|

## Parts

| Part number | ES1 | ES2 | Designation | Quantity | Note | EPC | Other make part |
|---|---|---|---|---|---|---|---|
| A 271 050 09 11 | | | Chain tensioner | 1 | For M271.8 | X | |
| A 000 993 10 78 | | | Timing chain | 1 | For M271.8 | X | |

## Validity

| Vehicle | Engine | Transmission |
|---|---|---|
| * | 271.861 | * |
| * | 271.860 | * |
| * | 271.820 | * |

## Full model designation breakdown

| Vehicle | Engine | Transmission |
|---|---|---|
| 172.447 | 271.861 | 711.653 |
| 172.447 | 271.861 | 711.654 |
| 172.447 | 271.861 | 722.997 |
| 172.448 | 271.861 | 711.655 |
| 172.448 | 271.861 | 722.997 |
| 204.047 | 271.860 | 722.618 |
| 204.047 | 271.860 | 722.997 |
| 204.048 | 271.860 | 711.653 |
| 204.048 | 271.860 | 711.655 |
| 204.048 | 271.860 | 716.607 |
| 204.048 | 271.860 | 716.612 |
| 204.048 | 271.860 | 722.696 |
| 204.048 | 271.860 | 722.997 |
| 204.049 | 271.820 | 711.653 |
| 204.049 | 271.820 | 711.655 |
| 204.049 | 271.820 | 716.607 |
| 204.049 | 271.820 | 716.612 |
| 204.049 | 271.820 | 722.696 |
| 204.049 | 271.820 | 722.997 |
| 204.247 | 271.860 | 722.618 |
| 204.247 | 271.860 | 722.997 |

**XENTRY**

| | | |
|---|---|---|
| 204.248 | 271.860 | 711.653 |
| 204.248 | 271.860 | 711.655 |
| 204.248 | 271.860 | 716.607 |
| 204.248 | 271.860 | 716.612 |
| 204.248 | 271.860 | 722.696 |
| 204.248 | 271.860 | 722.997 |
| 204.249 | 271.820 | 711.653 |
| 204.249 | 271.820 | 711.655 |
| 204.249 | 271.820 | 716.607 |
| 204.249 | 271.820 | 716.612 |
| 204.249 | 271.820 | 722.696 |
| 204.249 | 271.820 | 722.997 |
| 204.347 | 271.860 | 722.618 |
| 204.347 | 271.860 | 722.997 |
| 204.348 | 271.860 | 711.655 |
| 204.348 | 271.860 | 722.997 |
| 204.349 | 271.820 | 711.655 |
| 204.349 | 271.820 | 716.607 |
| 204.349 | 271.820 | 722.997 |
| 207.347 | 271.860 | 722.618 |
| 207.347 | 271.860 | 722.997 |
| 207.348 | 271.860 | 711.655 |
| 207.348 | 271.860 | 716.607 |
| 207.348 | 271.860 | 716.612 |
| 207.348 | 271.860 | 722.696 |
| 207.348 | 271.860 | 722.997 |
| 207.447 | 271.860 | 722.618 |
| 207.447 | 271.860 | 722.997 |
| 207.448 | 271.860 | 711.655 |
| 207.448 | 271.860 | 722.696 |
| 207.448 | 271.860 | 722.997 |
| 212.047 | 271.860 | 722.618 |
| 212.047 | 271.860 | 722.997 |
| 212.048 | 271.860 | 711.655 |
| 212.048 | 271.860 | 716.612 |
| 212.048 | 271.860 | 722.696 |
| 212.048 | 271.860 | 722.997 |
| 212.147 | 271.860 | 722.618 |
| 212.147 | 271.860 | 722.997 |
| 212.148 | 271.860 | 711.655 |
| 212.148 | 271.860 | 722.696 |
| 212.148 | 271.860 | 722.997 |
| 212.247 | 271.860 | 722.618 |

DOKONIE
© Copyright Daimler AG

XENTRY

| 212.247 | 271.860 | 722.997 |
| 212.248 | 271.860 | 711.655 |
| 212.248 | 271.860 | 716.612 |
| 212.248 | 271.860 | 722.696 |
| 212.248 | 271.860 | 722.997 |